**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| C. PEPPER LOGISTICS, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No:  4:20-cv-01444-MTS |
| vs. | ) | |
| | ) | |
| LANTER DELIVERY SYSTEMS, | ) | |
| LLC, et al., | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANT RYDER TRUCK RENTAL, INC.'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**



## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..............................................................................1

I. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST
   RYDER FOR LACK OF PERSONAL JURISDICTION .............................2

   A. Legal Standard ......................................................................................3

   B. This Court Lacks Personal Jurisdiction Over Ryder...........................4

      1. Plaintiffs have not established that Ryder has sufficient
        minimum contacts with Missouri .................................................4

      2. The Court does not have jurisdiction over Ryder based on the
        Missouri contacts of its alleged co-conspirators. .........................5

II. ALTERNATIVELY, ALL OF PLAINTIFFS' CLAIMS SHOULD BE
    DISMISSED FOR FAILURE TO STATE A CLAIM ..................................7

   A. Legal Standard ......................................................................................8

   B. Plaintiffs' Claims Under the Computer Fraud and Abuse Act, 18 U.S.C.
     § 1030 (Counts VI and X), Fail as a Matter of Law. ..............................8

   C. Plaintiffs' Claim Pursuant to 49 U.S.C. § 14704 (Count XII) Fails as a
     Matter of Law. ........................................................................................9

   D. Plaintiffs' Claims for Trade Secret Misappropriation (Counts VIII, IX,
     and XI) Fail as a Matter of Law...........................................................10

   E. Plaintiffs' Remaining Claims Are Preempted To The Extent They
     Involve Plaintiffs' Alleged Trade Secrets............................................12

   F. Plaintiffs' Claim for Conversion (Count I) Fails as a Matter of Law....................13

   G. Plaintiffs' Claim for Unjust Enrichment (Count II) Fails as a Matter of
     Law. ......................................................................................................13

   H. Plaintiffs' Claim for Tortious Interference (Count III) Fails as a Matter
     of Law. ..................................................................................................14

   I. Plaintiffs' Claim for Civil Conspiracy (Count XV) Fails as a Matter of
     Law ......................................................................................................14

III. CONCLUSION.........................................................................................15

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 8

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
  571 U.S. 49 (2013) ................................................................................................................. 4

*Baldridge v. McPike, Inc.*,
  466 F.2d 65 (10th Cir. 1972) ................................................................................................. 7

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
  No. 4:00-CV-70CEJ, 2002 WL 32727076 (E.D. Mo. Feb. 25, 2002) ................................... 12

*Basham v. Am. Nat. Cty. Mut. Ins. Co.*,
  No. 4:12-CV-4005, 2015 WL 1034193 (W.D. Ark. Mar. 10, 2015) ...................................... 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 8

*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................................................................... 10

*Binkley v. American Equity Mortgage, Inc.*,
  447 S.W.3d 194 (Mo. 2014) ................................................................................................... 13

*Block Indus. v. DHJ Indus., Inc.*,
  495 F.2d 256 (8th Cir. 1974) ................................................................................................. 3

*Brown v. Kerkhoff*,
  504 F. Supp. 2d 464 (S.D. Iowa 2007) .................................................................................. 5

*Brown v. Rollet Bros. Trucking Co.*,
  291 S.W.3d 766 (Mo. Ct. App. 2009) .................................................................................... 11

*Buchanan v. Magellan Health, Inc.*,
  No. 4:18-CV-00130-NCC, 2018 WL 4932533 (E.D. Mo. Oct. 11, 2018) .............................. 7

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................................................................... 3

*Burnett v. Grundy*,
  No. 14-00301, 2014 WL 12616808 (W.D. Mo.) .................................................................... 9

ii

*Calder v. Jones*,
   465 U.S. 783 (1984) ............................................................................................................. 3, 5

*CH Bus Sales, Inc. v. Geiger*,
   No. 18-cv-2444, 2019 WL 1282110 (D. Minn. Mar. 20, 2019) ............................................. 10

*City of St. Louis v. Am. Tobacco Co.*,
   No. 982-09652, 2003 WL 23277277 (Mo. Cir. Dec. 16, 2003) ................................................. 5

*Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*,
   796 S.W.2d 369 (Mo. 1990) ................................................................................................... 14

*Daimler AG v. Bauman*,
   571 U.S. 117, 130 n.8, 139 n.19 (2014) ................................................................................... 2

*Design Nine, Inc. v. Arch Rail Grp., LLC*,
   No. 4:18-cv-428, 2019 WL 1326677 (E.D. Mo. Mar. 25, 2019) ........................................... 13

*Dever v. Hentzen Coatings, Inc.*,
   380 F.3d 1070 (8th Cir. 2004) ............................................................................................. 3, 6

*Elsevier Inc. v. Doctor Evidence, LLC*,
   No. 17-cv-5540, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ................................................ 11

*Gen. Elec. Co. v. Uptake Techs., Inc.*,
   394 F. Supp. 3d 815 (N.D. Ill. 2019) ................................................................................... 10

*Glick v. Western Power Sports, Inc.*,
   944 F.3d 714 (8th Cir. 2019) ................................................................................................. 8

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ................................................................................................................ 3

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   307 F. Supp. 2d 145 (D. Me. 2004) ........................................................................................ 5

*Interfood Holding, B.V. v. Rice*,
   607 F. Supp. 2d 1059 (E.D. Mo. 2009) .................................................................................. 7

*Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945) ................................................................................................................ 3

*J & J Sports Prods., Inc. v. Garcia*,
   No. 4:13-cv-2416, 2014 WL 2644194 (E.D. Mo. June 13, 2014) ........................................... 13

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,*
  115 F.3d 1020 (D.C. Cir. 1997) ................................................................................................ 5

*Mastercraft Decorators, Inc. v. Orlando,*
  356 F. Supp. 3d 259 (W.D.N.Y. 2018) .................................................................................. 11

*MatrixCare Inc. v. Netsmart Techs., Inc.,*
  No. CV 19-1684 (MJD/SER), 2019 WL 3431788 (D. Minn. July 12, 2019) ........................... 8

*Mercer v. C. A. Roberts Co.,*
  570 F.2d 1232 (5th Cir. 1978) ............................................................................................... 11

*Mongler v. Knight,*
  No. 2:17 CV 6 CDP, 2017 WL 2931369 (E.D. Mo. July 10, 2017) ................................... 4, 5, 6

*Myers v. Casino Queen, Inc.,*
  689 F. 3d 904 (8th Cir. 2012) .................................................................................................. 4

*Nazeri v. Missouri Valley Coll.,*
  860 S.W.2d 303 (Mo. 1993) ................................................................................................... 14

*Oak Bluff Partners, Inc. v. Meyer,*
  3 S.W.3d 777 (Mo. 1999) ....................................................................................................... 15

*O'Connor v. Shelman,*
  769 S.W.2d 458 (Mo. App. 1989) .......................................................................................... 14

*Papasan v. Allain,*
  478 U.S. 265 (1986) ................................................................................................................ 12

*Phillis Schlafly Revocable Tr. v. Cori,*
  2016 WL 6611133 (E.D. Mo. Nov. 9, 2016) .......................................................................... 10

*Pillow v. General American Life Ins. Co.,*
  564 S.W.2d 276 (Mo. App. 1978) .......................................................................................... 14

*Reliant Care Mgmt., Co. v. Health Sys., Inc.,*
  No. 4:10CV38 CDP, 2011 WL 4369371 (E.D. Mo. Sept. 19, 2011) ....................................... 12

*Second Amendment Found. v. U.S. Conference of Mayors,*
  274 F.3d 521 (D.C. Cir. 2001) ................................................................................................. 7

*SFRL, Inc. v. Galena State Bank & Tr. Co.,*
  No. CIV. 10-4152, 2011 WL 4479065 (D.S.D. Sept. 22, 2011) ........................................... 6, 7

iv

*State ex rel. Norfolk S. Ry. Co. v. Dolan*,
    512 S.W.3d 41 (Mo. 2017) ............................................................................................................ 2

*Steinke v. Safeco Ins. Co.*,
    270 F. Supp. 2d 1196 (D. Mont. 2003) ........................................................................................ 5

*Vendavo, Inc. v. Price f(x) AG*,
    No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ...................................... 11

*W. Blue Print Co., LLC v. Roberts*,
    367 S.W.3d 7 (Mo. 2012) ............................................................................................................ 15

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...................................................................................................................... 3

*Wiles v. Worldwide Info., Inc.*,
    809 F. Supp. 2d 1059 (W.D. Mo. 2011) ...................................................................................... 13

**Statutes**

18 U.S.C. § 1030 *et seq.* ..................................................................................................................... 8, 9

18 U.S.C § 1839(3) ............................................................................................................................. 10

28 U.S.C. § 1404(a) .............................................................................................................................. 4

49 U.S.C. § 14704 ............................................................................................................................. 9, 10

765 Ill. Comp. Stat. Ann. 1065/8(a) .................................................................................................. 12

Mo. Rev. Stat. § 506.500 ...................................................................................................................... 2

Mo. Rev. Stat. § 417.453(4) ............................................................................................................... 10

Mo. Rev. Stat. § 417.463(1) ............................................................................................................... 12

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................................................................... 8

Fed. R. Civ. P. 12(b) ..................................................................................................................... 1, 2, 7

**Regulations**

49 C.F.R. § 376 ..................................................................................................................................... 9

Defendant Ryder Truck Rental, Inc. ("Ryder"), by and through its counsel, hereby submits this memorandum of law in support of its motion to dismiss Plaintiffs' Amended Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(2) and (b)(6).

## PRELIMINARY STATEMENT

Plaintiffs have not met their burden of establishing that this Court has personal jurisdiction over Ryder.  Moreover, Plaintiffs' vague and conclusory allegations regarding the alleged "coup" are insufficient and fail to plausibly support their conclusions.

According to Plaintiffs, the Plaintiff entities previously contracted with Lanter Delivery Systems, LLC ("Lanter") to provide certain delivery services.  To provide those services, Plaintiff Logistics Resource Solutions, Inc. ("Logistics Resource") leased certain equipment from Ryder. *See* Amended Complaint, Doc. No. 42 ("Compl.") ¶ 300 ("For the relevant period, Logistics Resource was the 'owner' of the equipment and had the 'right to exclusive use of equipment'"); *see also id.* ¶¶ 26(a), 64, 66.  On August 22, 2020, Lanter sent Plaintiffs a Notice of Discontinuation of Services after contract negotiations failed. *Id.* ¶¶ 42-43.  Lanter then notified Ryder of the development pursuant to a Limited Collection Facilitation and Assumption Agreement between Lanter and Ryder, in which Lanter assumed certain of Logistics Resources' contractual obligations to Ryder. *Id.* ¶ 143.  This allegedly prompted Ryder to declare an anticipatory breach of its agreement with Logistics Resource and repossess the rented equipment, which was located in states across the country. *Id.* ¶¶ 45, 139-40.  From this—and the allegation that Ryder had previously rekeyed its equipment—Plaintiffs conclude, upon information and belief, that "Ryder had actively participated in the conspiracy to disable and kill the Pepper Companies." *Id.* ¶ 125.

Plaintiffs do not establish any connection between Ryder and Missouri.  None of Ryder's

alleged conduct, nor any effect thereof, is alleged to have occurred in Missouri. Ryder, a Florida-based entity, should not be dragged into court in Missouri simply because Plaintiffs believe a conspiracy was hatched there. Moreover, Plaintiffs have failed to state any of their claims as a matter of law. Therefore, Ryder respectfully requests that the Court dismiss Plaintiffs' claims against Ryder pursuant to Federal Rule of Civil Procedure 12(b)(2) and/or (b)(6).

## I.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST RYDER FOR LACK OF PERSONAL JURISDICTION

This Court lacks personal jurisdiction over Ryder, a Florida-based corporation. Compl. ¶ 22. Although Ryder has operations throughout the country, Plaintiffs do not suggest that Ryder is subject to general jurisdiction in Missouri. Nor could they: Nothing in the allegations suggest that this the "exceptional case" in which the forum state is a "surrogate for the place of incorporation or head office" such that Ryder is "essentially at home" there. *Daimler AG v. Bauman*, 571 U.S. 117, 130 n.8, 139 n.19; *see also id.* at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."); *see also State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 47 (Mo. 2017) (no general jurisdiction over non-resident corporation that engaged in "substantial and continuous business in Missouri" and had a registered agent there).

Instead, Plaintiffs suggest that this Court has jurisdiction over Defendants because their causes of action "arise out of the transaction of business or the making of contracts within the State of Missouri" and that "the tortious conduct alleged … occurred in the State of Missouri and/or occurred so that the effect of the tortious conduct was aimed at the State of Missouri…." Compl. ¶ 24. But Plaintiffs merely recite Missouri's long-arm statute. *See* Mo. Rev. Stat. § 506.500. In fact, Ryder is not alleged to have aimed its conduct at Missouri or to have transacted any business, made any contracts, or committed any tortious conduct in Missouri. Instead, Plaintiffs must mean that Ryder is subject to this Court's jurisdiction by virtue of its participation in the alleged

conspiracy, which is alleged to have some connection with Missouri.  This Court should decline

to adopt a conspiracy theory of jurisdiction because it violates Ryder's constitutional right to due

process.   Alternatively, the Court should decline to exercise jurisdiction over Ryder because

Plaintiffs' vague conspiracy allegations, based solely on information and belief, are insufficient to

establish this Court's jurisdiction.

### A.  Legal Standard

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff "must state

sufficient facts in the complaint to support a reasonable inference that [the defendants] can be

subjected to jurisdiction within the state.  Once jurisdiction ha[s] been controverted or denied, [the

plaintiff] ha [s] the burden of proving such facts." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070,

1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)).

A defendant must have sufficient minimum contacts with the forum to justify the court's

exercise of personal jurisdiction over the defendant.   *Int'l Shoe Co. v. Wash. Office of

Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).  Minimum contacts may exist

when a defendant "purposefully avails itself of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S.

235, 253 (1958), or when a defendant's actions are "expressly aimed" at the forum state, *Calder

v. Jones*, 465 U.S. 783, 789-90 (1984).  But a defendant may not "be haled into a jurisdiction solely

as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another

party or a third person." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations

omitted).  Instead, a defendant must have a substantial relationship with the forum state "aris[ing]

out of contacts that the 'defendant himself' creates with the forum State." *Walden v. Fiore*, 571

U.S. 277, 277 (2014) (quoting *Burger King*, 471 U.S. at 475)).  The defendant must have been able

to "reasonably foresee his or her actions having consequences felt in Missouri." *Mongler v. Knight*, No. 2:17 CV 6 CDP, 2017 WL 2931369, at *4 (E.D. Mo. July 10, 2017) (citing *Myers v. Casino Queen, Inc.*, 689 F. 3d 904, 911 (8th Cir. 2012)).

**B. This Court Lacks Personal Jurisdiction Over Ryder.**

This Court lacks personal jurisdiction over Ryder because Plaintiffs have not established that Ryder has the necessary minimum contacts with the state of Missouri to establish jurisdiction nor plausibly alleged a conspiracy that would permit the Court to exercise jurisdiction over Ryder based on its co-Defendants' alleged contacts in Missouri.

1. *Plaintiffs have not established that Ryder has sufficient minimum contacts with Missouri.*

Ryder is a Florida-based entity. Compl. ¶ 22. It contracted with Logistic Resources, an Illinois-based entity, *id.* ¶¶ 9, 26(a), 64, 66, 300, and there is no indication that the contracts were made in or otherwise relate to Missouri.[1]

Plaintiffs' allegations against Ryder are that: 1) Ryder rekeyed its equipment over a period of many months, returning the new keys to the master key boxes where Plaintiffs' drivers accessed them, *id.* ¶¶ 129-136, and 2) Ryder unlawfully took back possession of equipment it had leased to Plaintiffs following Lanter's termination of its agreements with Plaintiffs, *id.* ¶¶ 139-141. Plaintiffs do not allege that any of this conduct occurred in Missouri. It is not even clear that any of the alleged *effects* occurred in Missouri: Plaintiffs list the 15 states where they maintain offices,

---

[1] In fact, the parties' contract specifies that the contract is governed by Florida law and that "the exclusive venue for any action relating to this Agreement shall be in a court of competent jurisdiction in Miami-Dade County, Florida." Because the ability to enforce a forum selection clause in a 12(b)(6) motion is in question after the Supreme Court's opinion in *Atlantic Marine*, which explicitly blessed 28 U.S.C. § 1404(a) as the mechanism through which to raise such an issue, Ryder does not argue for dismissal on the basis on the forum selection clause in the instant motion. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59 (2013) ("Section 1404(a) … provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district. And … a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases.").

and none of them are in Missouri. *Id.* ¶ 39. And although Plaintiffs allege that Ryder participated in a "scheme" that was "orchestrated" from Lanter's headquarters in Missouri, *see, e.g.*, *id.* ¶¶ 2, 26, there is no suggestion that Ryder ever actually visited Lanter's headquarters in furtherance of said scheme.

Ryder could not have foreseen that its alleged conduct would result in harm in Missouri. *Mongler*, 2017 WL 2931369, at *4. These allegations cannot support a finding that Ryder purposefully availed itself of the privilege of conducting activities in Missouri or that it "expressly aimed" its actions at Missouri. *Calder*, 465 U.S. at 790.

2. *The Court does not have jurisdiction over Ryder based on the Missouri contacts of its alleged co-conspirators.*

To the extent Plaintiffs suggest that the Court can exercise jurisdiction over Ryder based on its co-Defendants' alleged acts in Missouri, that, too, should be rejected. Finding jurisdiction over all alleged co-conspirators any time a conspiracy is alleged "gives short shrift to the constitutional mandate that there be some connection between each defendant and the forum." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 518 (S.D. Iowa 2007). Therefore, this Court should join the many others to have wholly rejected a conspiracy theory of jurisdiction as inconsistent with due process. *See, e.g.*, *City of St. Louis v. Am. Tobacco Co.*, No. 982-09652, 2003 WL 23277277, at *7 (Mo. Cir. Dec. 16, 2003); *Kerkhoff*, 504 F. Supp. 2d 517; *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 307 F. Supp. 2d 145, 157-58 (D. Me. 2004); *Steinke v. Safeco Ins. Co.*, 270 F. Supp. 2d 1196, 1200 (D. Mont. 2003).

Even if the Court finds that a defendant can be subject to a forum state's jurisdiction based on the contacts of a co-conspirator, it should not exercise jurisdiction in this case because Plaintiff has failed to "plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115

5

F.3d 1020, 1031 (D.C. Cir. 1997). "[B]oth due process and the Missouri long-arm statute require something more than a boilerplate allegation of conspiracy." *Mongler*, 2017 WL 2931369, at *6; *see also SFRL, Inc. v. Galena State Bank & Tr. Co.*, No. CIV. 10-4152, 2011 WL 4479065, at *5 (D.S.D. Sept. 22, 2011) ("The mere possibility, based on speculation, that the [defendants] conspired … is not enough to meet the strict constitutional standards that govern personal jurisdiction."); *Basham v. Am. Nat. Cty. Mut. Ins. Co.*, No. 4:12-CV-4005, 2015 WL 1034193, at *4-5 (W.D. Ark. Mar. 10, 2015) (plaintiffs required to plead with particularity specific facts "showing the participation in a conspiracy affecting the forum state that, when challenged, are supported by some evidence"). This is consistent with the general principle that the plaintiff has the burden of establishing jurisdiction. *See Dever*, 380 F.3d at 1072.

Plaintiffs have not pled any facts showing that there was a conspiracy or that Ryder participated in it. Plaintiffs do not suggest how, when, where, or with whom Ryder conspired. Instead, Plaintiffs apparently infer from Ryder's alleged conduct "[u]pon information and belief, Ryder … actively participated in the conspiracy to disable and kill the Pepper Companies," Compl. ¶ 125. But this speculation is unwarranted. Assuming Plaintiffs' allegations are true, Ryder had advance knowledge that Logistics Resource, the entity to whom it had leased millions of dollars of equipment, was about to lose its business with its primary customer, Lanter. Ryder's alleged actions are entirely consistent with an entity seeking to protect its interests in its own property and cannot suggest any intent to join a conspiracy to "disable and kill" the Plaintiff entities.

Regardless, the mere possibility, based on speculation, that the Defendants conspired together represents nothing more than a legal conclusion and does not constitute the prima facie showing necessary to support personal jurisdiction. *See, e.g.*, *Basham*, 2015 WL 1034193, at *5 (declining to infer from defendants' behavior that a conspiracy had occurred when plaintiff failed

to specifically allege any agreement or communication between the defendants); *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (plaintiff's conspiracy allegations insufficient even though news reports suggested the defendants met to discuss related matters because the plaintiff had not shown that the parties had reached agreement at a particular time and place). "Mere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." *SFRL, Inc.*, 2011 WL 4479065, at *4 (quoting *Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir. 1972).

## II.   ALTERNATIVELY, ALL OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

If the Court determines that it can exercise personal jurisdiction over Ryder consistent with due process, it should dismiss all claims against Ryder pursuant to Federal Rule of Civil Procedure 12(b)(6). This Memorandum briefly describes why each of Plaintiffs' claims fails as a matter of law. In addition, because Plaintiffs assert causes of action resulting from Defendants' alleged participation in a common scheme, the arguments already set forth by the other Defendants in this matter apply equally to Ryder. To promote judicial efficiency and conserve the Court's resources, Ryder therefore adopts by reference the more detailed arguments for dismissal of Counts I through III, VI, VIII through XII, and XV as set out in Lanter's Memorandum in Support of its Motion to Dismiss, ECF No. 56, and White Line Systems, LLC and Darien Brokerage, LLC's Memorandum in Support of Their Motion to Dismiss, ECF No. 59 ("Defendants' Briefing"). *See Buchanan v. Magellan Health, Inc.*, No. 4:18-CV-00130-NCC, 2018 WL 4932533, at *2 (E.D. Mo. Oct. 11, 2018) (allowing adoption by reference of codefendant's motion to dismiss arguments); *Interfood Holding, B.V. v. Rice*, 607 F. Supp. 2d 1059, 1061 (E.D. Mo. 2009) (adopting by reference codefendants' summary judgment arguments). Because Counts IV, V, VII, XIII, and XIV are not

asserted against Ryder, Ryder neither incorporates those portions of the Defendants' Briefing nor addresses them here.

### A. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to provide context and plausible support for the legal conclusions. *See* Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-59, 570 (2007); *Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (FRCP 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Where the facts alleged do not permit the court to "infer more than the mere possibility of misconduct," the complaint must be dismissed. *Iqbal*, 556 U.S. at 679.

### B. Plaintiffs' Claims Under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Counts VI and X), Fail as a Matter of Law.

Plaintiffs' allege that Defendants violated the Computer Fraud and Abuse Act ("CFAA"), specifically, 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(B), and 1030(a)(5)(C). Compl. ¶¶ 244-46. However, the CFAA only provides a private right of action for claims under subsection (a)(5)(B).[2] *See MatrixCare Inc. v. Netsmart Techs., Inc.*, No. CV 19-1684 (MJD/SER), 2019 WL 3431788, at *7 (D. Minn. July 12, 2019), report and recommendation adopted as modified, No. CV 19-1684 (MJD/SER), 2019 WL 3431162 (D. Minn. July 30, 2019). Subsection (5)(B) requires an allegation of "damage," § 1030(a)(5)(B), defined as an "impairment to the integrity or availability of data, a program, a system, or information," § 1030(e)(8). Plaintiffs do not allege

---

[2] Specifically, section (g) provides a private right of action for conduct that "involves" a factor set forth in certain subsections of (c)(4)(A)(i). In turn, (c)(4)(A)(i) only applies to violations of (a)(5)(B).

this type of "damage."

Even if Plaintiffs could bring a claim for violations of other sections of the CFAA, it must fail.  Section 1030(g) states that a plaintiff only has a cause of action if the conduct involves a factor forth in subsection (c)(4)(A)(i)(I) through (IV).  Subsections II through IV have no application here, so Plaintiffs must allege conduct described in subsection I: "loss … aggregating at least $5,000 in value."  "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  § 1030(e)(11).

Plaintiffs set forth a list of losses they suffered and assert that these losses, in combination, exceed $5,000.  Compl. ¶ 247.  Some of the identified losses, such as those relating to a damage assessment, are covered under the CFAA.  *Id.* ¶ 247(d).  However, Plaintiffs also allege other harms not properly considered "losses," such as "[l]oss of compensation from the trade secret, proprietary and confidential information."  *Id.* ¶ 247(c).  *See Burnett v. Grundy*, No. 14-00301, 2014 WL 12616808, *1-3 (W.D. Mo.) (dismissing claim where $5,000 loss was for "the potential loss of revenue resulting from their confidential and proprietary business information being shared with their competitors").  Because Plaintiffs have not alleged $5,000 in "losses" as defined by the CFAA, Plaintiffs have failed to state a claim.

For the reasons stated herein and as explained in more detail in Defendants' Briefing, Plaintiffs' CFAA claims fail as a matter of law.  *See* ECF No. 56 at 14-15; ECF No. 59 at 6-9.

**C. Plaintiffs' Claim Pursuant to 49 U.S.C. § 14704 (Count XII) Fails as a Matter of Law.**

Plaintiffs allege violations of the Truth in Leasing regulations codified in 49 C.F.R. § 376, pursuant to 49 U.S.C. § 14704.  However, Plaintiffs lack standing to bring such a claim because their allegations do not fall within the "zone of interests" the statute is intended to protect.  *See*

*Bennett v. Spear*, 520 U.S. 154, 162-63 (1997).  Plaintiffs therefore lack standing to bring a claim under 49 U.S.C. § 14704.  For the reasons stated herein and as explained in more detail in Defendants' Briefing, Plaintiffs' claim under 49 U.S.C. § 14704 fails as a matter of law.  *See* ECF No. 56 at 15-17; ECF No. 59 at 12-14.

### D. Plaintiffs' Claims for Trade Secret Misappropriation (Counts VIII, IX, and XI) Fail as a Matter of Law.

Plaintiffs' claims for trade secret misappropriation likewise fail as a matter of law because Plaintiffs have failed to adequately plead that the information allegedly taken constitutes trade secrets or that the purported trade secrets derive independent value from not being generally known to others.[3]  To state a claim, Plaintiffs must allege that the information taken constitutes a "trade secret," defined in the Missouri Uniform Trade Secrets Act as information including "technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process" that derives value from not being known and not being readily ascertainable by proper means by others who can obtain economic value from its use. Mo. Rev. Stat. § 417.453(4); *see also* 18 U.S.C. § 1839(3).

It is "well-established that, post-*Twombly* and *Iqbal*, a plaintiff … must describe their trade secrets with more than 'conclusory statements,' and with sufficient information to infer more than a mere possibility of misconduct." *See CH Bus Sales, Inc. v. Geiger*, No. 18-cv-2444, 2019 WL 1282110, at *8 (D. Minn. Mar. 20, 2019).  Merely listing "broad, categorical terms, more

---

[3] The elements required to state a claim for trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA") are very similar to those required under the trade secret laws of Missouri and Illinois.  *See Phillis Schlafly Revocable Tr. v. Cori*, 2016 WL 6611133, at *3 (E.D. Mo. Nov. 9, 2016) ("The elements of...trade secret misappropriation claims under the [DTSA] and the [Missouri Uniform Trade Secrets Act] are essentially the same."); *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 831 (N.D. Ill. 2019) ("Given the similarity of the [DTSA and Illinois Trade Secrets Act], this Court applies the same analysis to both claims.").  Therefore, Ryder addresses Plaintiffs' state-law and federal-law trade secret claims together.

descriptive of the types of information that generally *may* qualify as protectable trade secrets" rather than the particular trade secrets allegedly misappropriated is insufficient. *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).

Plaintiffs claim that Defendants took everyday business records, including the drivers' "names, phone numbers, contact information, rate of pay, health information, routes, internal evaluations, and other internal information" and information about "employee salaries, amounts paid to drivers, customers, vendors, pricing, and any discounts to customers." Compl. ¶¶ 193, 262. But these are exactly the sort of "broad, categorical" descriptions courts have found insufficient. *Vendavo, Inc.*, 2018 WL 1456697, at *4; *see also Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-cv-5540, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (finding that allegations of trade secrets must "do more than simply list general categories of information"). Plaintiffs may not simply "list the categories of purported trade secrets and declare that they are confidential." *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 272 (W.D.N.Y. 2018).

Moreover, courts have repeatedly held that information such as customer and pricing information without more does not constitute trade secrets. *Brown v. Rollet Bros. Trucking Co.*, 291 S.W.3d 766, 779 (Mo. Ct. App. 2009) (truck dispatcher's customer lists and rate sheets not protectable trade secrets); *Mercer v. C. A. Roberts Co.*, 570 F.2d 1232, 1238 (5th Cir. 1978) ("a mere list of customers does not constitute a trade secret"); *Vendavo, Inc.*, 2018 WL 1456697, at *2-3 (general allegations of "source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives … and other information related to the development of its price-optimization software, including ideas and plans for product enhancements" were insufficient to state a claim); *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 270-71 (W.D.N.Y.

2018) (plaintiff's allegations regarding misappropriation of customer lists, including contact information, detailed information about each customer, and pricing information, and pricing information insufficient to state a claim).

Moreover, Plaintiffs' conclusion that the purported trade secrets derive independent value from not being generally known to others in insufficient to state a claim. *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Therefore, for the reasons stated herein and as explained in more detail in Defendants' Briefing, Plaintiffs' claims for trade secret misappropriation fails as a matter of law. *See* ECF No. 56 at 6-12; ECF No. 59 at 10-11.

### E. Plaintiffs' Remaining Claims Are Preempted To The Extent They Involve Plaintiffs' Alleged Trade Secrets.

Both the Missouri and Illinois trade secret statutes preempt Plaintiffs' remaining claims to the extent they involve Plaintiffs' purported trade secrets. *See* Mo. Rev. Stat. § 417.463(1) (The provisions of Missouri's trade secrets statute "displace conflicting tort, restitutionary, and other [state] laws ... providing civil remedies for misappropriation of a trade secret."); 765 Ill. Comp. Stat. Ann. 1065/8(a) ("Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret."). "A claim that is based on facts related to the misappropriation claim is … preempted." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00-CV-70CEJ, 2002 WL 32727076, at *4 (E.D. Mo. Feb. 25, 2002) (citing cases). All of Plaintiffs' remaining claims are preempted by the state trade secret acts to the extent they are based on the conversion of Plaintiffs' trade secrets. *See, e.g.*, *id.* at *5 (claim for conversion preempted); *Reliant Care Mgmt., Co. v. Health Sys., Inc.*, No. 4:10CV38 CDP, 2011 WL 4369371, at *2 (E.D.

Mo. Sept. 19, 2011) (claim for tortious interference preempted). For the reasons stated herein and as explained in more detail in Defendants' Briefing, Plaintiffs' remaining claims are preempted to the extent they relate to the misappropriation claims. *See* ECF No. 56 at 12-13; ECF No. 59 at 3-6, 9.

### F. Plaintiffs' Claim for Conversion (Count I) Fails as a Matter of Law.

Plaintiffs' conversion also fails as a matter of law to the extent it alleges the conversion of Plaintiffs' information, *see* Compl. ¶¶ 180, 185, because "Missouri courts have not extended the doctrine of conversion to purely intangible rights," *J & J Sports Prods., Inc. v. Garcia*, No. 4:13-cv-2416, 2014 WL 2644194, at *4 (E.D. Mo. June 13, 2014). Moreover, Plaintiffs do not allege that they were "deprived of possession" of their information or "prevented from utilizing" it as is required to bring a claim of conversion. *See Design Nine, Inc. v. Arch Rail Grp., LLC*, No. 4:18-cv-428, 2019 WL 1326677, at *8 (E.D. Mo. Mar. 25, 2019). For the reasons stated herein and as explained in more detail in Defendants' Briefing, Plaintiffs' conversion claim fails as a matter of law to the extent it involves the conversion of Plaintiffs' information. *See* ECF No. 56 at 4-5; ECF No. 59 at 3-4.

### G. Plaintiffs' Claim for Unjust Enrichment (Count II) Fails as a Matter of Law.

To succeed on a claim for unjust enrichment, a plaintiff must allege that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Binkley v. American Equity Mortgage, Inc.*, 447 S.W.3d 194, 199 (Mo. 2014). The claim requires a "contract-like" or "quasi-contractual" relationship between the parties. *Wiles v. Worldwide Info., Inc.*, 809 F. Supp. 2d 1059, 1083-84 (W.D. Mo. 2011). Where, as here, the defendant is alleged to have stolen information and property from Plaintiffs, a claim for unjust enrichment is

inappropriate. For the reasons stated herein and as explained in more detail in Defendants' Briefing, Plaintiffs' claim for unjust enrichment fails as a matter of law. *See* ECF No. 56 at 5-6; ECF No. 59 at 4-5.

### H. Plaintiffs' Claim for Tortious Interference (Count III) Fails as a Matter of Law.

Plaintiff fails to state a claim for tortious interference because Ryder was privileged to act to protect its own economic interests. An entity is justified in interfering with another's business expectancy for the purpose of protecting its own economic interest. *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 316-17 (Mo. 1993); *Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 372 (Mo. 1990). There is no impropriety of self-interested interference when a defendant has a legitimate economic interest in the contract or expectancy, such as a prior contract of his own. *O'Connor v. Shelman*, 769 S.W.2d 458, 461 (Mo. App. 1989); *Pillow v. General American Life Ins. Co.*, 564 S.W.2d 276, 282 (Mo. App. 1978). Ryder was justified to act to protect its own economic interests in its contracts with Logistics Resource.

Moreover, Plaintiffs have failed to allege Ryder employed "improper means" in protecting its own interests. *Nazeri*, 860 S.W.2d at 317. "Improper means" are those means that are "independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.* Neither rekeying its equipment nor declaring anticipatory breach of it contract with Logistics Resource constitute "improper means" of interference.

For the reasons stated herein and as explained in more detail in Defendants' Briefing, Plaintiffs' claim for tortious interference fails as a matter of law. *See* ECF No. 56 at 14; ECF No. 59 at 5-6.

### I. Plaintiffs' Claim for Civil Conspiracy (Count XV) Fails as a Matter of Law

"Although civil conspiracy has its own elements that must be proven, it is not a separate

14

and distinct action." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012). Moreover, because the "tortious acts alleged as elements of [the] civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999). As such, Plaintiffs' claim for conspiracy must be dismissed.

### III.    CONCLUSION

For the foregoing reasons, Ryder respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice, and for any further and additional relief this Court deems just and proper. Plaintiffs have already amended their Complaint once in response to the other Defendants' motions to dismiss on the same bases set forth in Ryder's motion. Any further amendment would be futile.

Dated: January 15, 2021                    Respectfully submitted,

                                           **DOWD BENNETT LLP**


                                           By: */s/ James F. Bennett*
                                           James F. Bennett          #46826MO
                                           Arin H. Smith             #72636MO
                                           7733 Forsyth Blvd., Suite 1900
                                           St. Louis, Missouri 63105
                                           (314) 889-7300 (telephone)
                                           (314) 863-2111 (facsimile)
                                           jbennett@dowdbennett.com
                                           asmith@dowdbennett.com

                                           **Attorneys for RYDER TRUCK RENTAL, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, the foregoing was filed electronically with the

Clerk of Court by using the Court's CM/ECF system, to be served via operation of the Court's

electronic filing system upon all counsel of record.


_____
*/s/ James F. Bennett*