UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 21-cv-21573-JAL

RYDER TRUCK RENTAL, INC.,

      Plaintiff,

v.

LOGISTICS RESOURCE SOLUTIONS, INC.,

      Defendant.

_____/

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTER-CLAIM**

COMES NOW THE DEFENDANT, LOGISTICS RESOURCE SOLUTIONS, INC., AND ANSWERS THE COMPLAINT, FILED ITS AFFIRMATIVE DEFENSES AND COUNTERCLAIM AND STATES:

1. Admits Ryder is a corporation in Florida;

2. Admits Logistics Resource Solution, Inc., is an Illinois corporation;

3. Denies in part that venue is proper in Dade County because the plaintiff has been sued in Missouri, in case # 4:20-cv-01444 and has filed motions and other pleadings in that Court.

4. Admits in part and denies in part. Denies that venue is proper when the plaintiff has been sued in Missouri prior to the filing of this law suit and has engage in Forum shopping.

5. Admits;

6. Admits;

1

7. Admits in part but denies it is a binding agreement in that the plaintiff has breached the contract, thus voiding it;

8. Admits in part but denies that the charges are valid and denies the amounts are valid;

9. Denied that there was a default due to plaintiff's conduct;

10. Admits in part but alleges it was the plaintiff's conduct that caused the default;

11. Admits in part but denies damages;

12. Denies in that the paragraph is conclusory in nature;

13. Admits leased vehicles and but alleges it was the plaintiff's conduct that caused the default;

14. Denies in that it is unknown what the plaintiff learned;

15. Admits plaintiff sent a letter.  Denies the balance of the paragraph in that the allegations are conclusory in nature;

16. Denied;

17. Admits letter denies the balance of the paragraph;

18. Denied in that there is no documentation attached to the complaint indicating a cancellation;

19. Denied and alleges it was the plaintiff's conduct that caused the default;

20. Admits in part and denies damages to the trucks and alleges it was the plaintiff's conduct that caused the default;

21. Denies damages to the trucks;

22. Defendant reincorporates all prior answers to the complaint;

23. Admits rental agreements denies breach alleges it was the plaintiff's conduct that

2

caused the default;

24. Admits in part denies damages to the trucks and alleges it was the plaintiff's conduct that caused the default;

25. Admits in part and alleges it was the plaintiff's conduct that caused the default;

26. Admits in part and alleges it was the plaintiff's conduct that caused the default;

27. Denied;

28. Denied;

## AFFIRMATIVE DEFENSES

## 1ST AFFIRMATIVE DEFENSE

29. The plaintiff conspired with other persons and parties to wrongfully take the trucks from the defendant and to be utilized by other parties during the time period that the contract was in force and therefore, it was the plaintiff's conduct that caused any alleged default.

## 2nd AFFIRMATIVE DEFENSE

30. The plaintiff converted the trucks for their own used or for the use of other by conspiring in advance to take the trucks and give them to other persons or entities that are currently using the trucks that are the subject matter of this litigation.

## 3rd AFFIRMATIVE DEFENSE

31. The plaintiff interfered with the business relationship with other persons and entities to take control and possession of the trucks and to give them to other to use while the parties were still in a contractual relationship.

4th **AFFIRMATIVE DEFENSE**

32.  The plaintiff alleged they anticipated a breach of the contract.  There was no court order determining the anticipatory breach and prior to any alleged breached, the plaintiff took control of the trucks and gave them to other parties and entities to use, thus breaching the contract with the defendant.

5th **AFFIRMATIVE DEFENSE**

The plaintiff has breached the contract by converting the trucks to other use and depriving the defendant of the use of the trucks.

**COUNTER CLAIMS**

**COUNTER-CLAIM FOR INJUNCTIVE RELIEF AND DAMAGES**

Defendants/Counter-Claimant, Logistics Resource Solutions, Inc., for their cause(s) of actions against Plaintiff/Counter-Defendant, Ryder Truck Rental, Inc., state, aver, and allege as follows:

33. This lawsuit arises from the coordinated plan of Plaintiff/Counter-Defendant, Ryder Truck Rental Inc., to disable and kill Defendants/Counter-Claimant, Logistics Resource Solutions, Inc., by unlawfully depriving Defendants/Counter-Claimants of the very means by which they operate their logistics and delivery companies.

34. Plaintiff/Counter-Defendants, their agents and co-conspirators devised the plan and orchestrated it out of the headquarters of the Plaintiff/Counter-Defendant's in St. Louis County, State of Missouri on August 22, 2020.

4

35. Plaintiff/Counter-Defendant, Ryder Truck Rental Inc.'s scheme included: hijacking and converting approximately 1000 vehicle power units and trailers (tractor – trailers), which belonged to Defendants/Counter-Claimant; stealing and withholding the payroll information; wrongly and tortuously interfering with contracts that the Pepper Companies had with about 700 drivers who were Independent contractors ("drivers"); having said drivers drive for Plaintiff/Counter – Defendant, Ryder Truck Rental, Inc., in violation of the Federal Motor Carrier Safety Regulations ("FMCSR"); unlawfully accessing the Pepper Companies' confidential information; and illegally withholding the Pepper Companies' protected property.

36. Simply put, Plaintiff/Counter - Defendant, Ryder Truck Rental, Inc., carefully planned and orchestrated plot was a coup d'etat.

37. Defendants/Counter-Claimant, Logistics Resource Solutions, Inc., filed this cause of action in an effort to save their businesses from the calculated schemes, artifices, statutory and regulatory violations, and other actions of Plaintiff/Counter - Defendant, Ryder Truck Rental, Inc. to disable Defendants/Counter-Claimants and put them out of business.

## PARTIES, JURISDICTION AND VENUE

38. Defendant/ Counter – Claimant, Logistics Resource Solutions, Inc. ("Logistics Resource"), is an Illinois Corporation, registered to do business in the state of Missouri, with a primary address of 1600 Wayne Lanter Drive, Madison, IL 62060. Timeless Logistical Solutions provides service to its primary customer, LANTER DELIVERY SYSTEMS, LLC., in St. Louis County, State of Missouri.

39. Plaintiff/Counter – Defendant, Ryder Truck Rental, Inc. D/B/A/ Ryder Transportation

5

Services, is a Florida for-profit, corporation, registered to do business in the state of Missouri, with its corporate headquarters 11690 NW 105 Street, Miami, Florida 33178, and with place of business throughout the United States, including within the jurisdiction of this Court.

40. This Court has jurisdiction over Plaintiff/Counter - Defendant, because the causes of action asserted against them arise out of the transaction of business or the making of contracts within the state of Missouri, and because the tortious conduct alleged herein occurred in the state of Missouri and/or occurred so that the effect of the tortious conduct was aimed at the state of Missouri and the defendant's reasonably anticipated that their tortious conduct would cause them to be haled into the courts of the state of Missouri.

41. Subject matter jurisdiction is proper pursuant to 28 U.S.C. section 1331, 1367, 1441, 1446 and venue in this Court is proper pursuant to 28 U.S.C. section 1441(a).

## BACKGROUND FACTS RELATING TO ALL COUNTS

42. This lawsuit arises out of the tortious and wrongful conduct and schemes of Plaintiff/Counter-Defendants which were orchestrated from the headquarters of Ryder Truck Rental, Inc., St. Louis County, and which as described in more detail below Plaintiff/Counter-Defendants improperly:

     a. Hijacked, converted, and took possession of approximately 1000 power units and trailers in which logistics resource had an exclusive possessory leasehold interest from Ryder, Penske and others;

     b. Took possession of LRS Leasing's electronic property, which was located within the power units and trailers described above;

6

c. Caused drivers to breach their independent contractor agreements or brokerage agreements;

d. Caused managers and other employees to breach their duties of loyalty and fiduciary duties;

e. Caused managers and employees to violate the Trade Secrets Acts and Defend Trade Secrets Act and transmit proprietary and confidential information to Lanter Delivery, White Line, and Darien Brokerage;

f. Violated the Federal Motor Carrier Safety Regulations ("FMCSR") (49 CFR Parts 390 and 391) by having drivers drive without a valid "application for employment" or a valid pre-employment controlled substances and alcohol test, or valid placards on their trucks;

g. Unlawfully coerced and/or abetted drivers to violate the Federal Motor Carrier Safety Regulations ("FMCSR") in violation of 49 CFR 390.6(a) and 390.13;

h. Violated Federal Motor Carrier Safety Regulations ("FMCSR") (49 CFR Part 376) by utilizing Logistics Resource Solutions, Inc. equipment without valid leases from defendant had the right to exclusively use said equipment.

i. Tortuously interfered with defendant by causing lessors to breach lease agreements relating to the lease of equipment.

43. As alleged hereinbelow, each member of the conspiracy committed a wrongful act in furtherance of the conspiracy which permits conspirators to be liable for the wrongful acts alleged herein.

44. Plaintiff/Counter-Defendant companies are operated by Steve Lanter and Bo Lanter from its headquarters in St. Louis County, State of Missouri.

45. Jim Pepper worked for Lanter Delivery from 1991 to 1997 holding various positions.

## RYDER

46. The role of Ryder was of prime importance to the scheme of disabling and killing defendant's business and The Pepper Companies business.

47. In the years preceding the August 22 coup d'état, Lanter Delivery had caused fewer and fewer power units and trailers to be rented by LRS from vendors such as Penske Truck Leasing Co., L.P. so that Ryder was the prime vendor to defendant/counter-claimant and the Pepper Companies.

48. Upon information and belief, this was because Lanter Delivery had a relationship with Ryder that included:

   a. Ownership by the same investment group, EGI, which owns a large percentage of Lanter Delivery's sole member, and associated entities, as well as Ryder and its parent entity.

   b. A close, personal relationship between Bo Lanter and Kevin Butterfield, an executive at Ryder.

49. Upon information and belief, Ryder had actively participated in the conspiracy to disable and kill the Pepper companies for as many as nine months, and perhaps even more, prior to August 22, 2020.

50. Ryder's participation to the scheme was critical, because it did not have the hundreds of power units readily on hand for White Line to use to transport Lanter Delivery contracted shipments without using those power units which were already validly leased to Pepper Companies.

8

51. Ryder, Lanter Delivery, White Line and other conspirators knew that unless the drivers who Lanter Delivery and White Line hoped to entice away from the valid independent contractor agreements with Pepper Companies, had a power unit to pilot and trailers to carry the shipments, the disable and kill scheme would fail.

52. In fact, the use of the power units was the fulcrum upon which the entire scheme balanced.

53. Accordingly, upon information and belief, mechanics at the direction of Ryder and/or other members of the scheme, secretly re-keyed the ignition to power units to which Pepper Companies had a valid possessory interest when set power units were parked overnight at a parking lot to which Ryder had access and control.

54. The usual procedure for drivers for pepper companies and returning from a delivery was:

  a. The driver would park the power unit;

  b. The driver would perform post-trip inspections and paperwork;

  c. The driver would turn in said post trip inspections and paperwork to an agent of the Pepper Companies at office to which agents of Lanter Delivery also had access, and;

  d. The driver would return keys to the power unit to a master key box at an office to which agents of Lanter Delivery also had access.

55. Upon information and belief, is a part of the conspirators scheme, at times when agents of were not present, mechanics and other agents of Ryder would surreptitiously gain access to the master key box and use keys assigned to specific power units leased by LRS from said master key box to access and power units.

56. Mechanics and other agents of Ryder convention re-key the power units leased by LRS and return new keys to the master key box, all unbeknownst to LRS.

9

57. Upon information and belief, Ryder and other members of the scheme retained copies of the new keys by which Plaintiff/Counter-Defendant could gain access to, and drive, the power units to which LRS had a valid possessory interest.

58. In this way, defendants could be assured that, as long as agents of LRS were denied access to the master key box, LRS could not access the power units with any copies of keys to the power units LRS may have held in reserve.

59. Agents for Ryder and/or the others rekeyed the ignition to the power units leased by LRS without the knowledge of LRS.

60. As this process had to be performed for hundreds of units, at all times in which agents of LRS were not present to observe this surreptitious and conspiratorial behavior, it took months to complete the task of rekeying the power units to be ready on August 22, 2020.

61. Further, Ryder and its agents performed other key roles in the scheme to disable and kill LRS.

62. On the morning of the coup d'état, August 22, 2020 agents of Ryder met the drivers of Pepper Companies/LRS as they pulled into the parking lot. It was not in any way normal procedure for Ryder to meet the power units and trailers as the drivers returned from deliveries.

63. In fact, on August 22, 2020, agents of Ryder took the additional following actions furtherance of the conspiracy:

   a. They stop the drivers as they pulled into the parking lot;

   b. They instructed the drivers to give them the keys of the power units;

   c. They instructed the drivers to remove all personal property from the power unit;

   d. Upon information and belief, they did not provide time to the drivers for them to perform

the necessary post trip inspections and paperwork;

    e. They moved the power units to a part of the parking lot not typically used by Pepper Companies trucks were moved them to a remote parking area altogether, such as lots at airports and remote areas;

    f. They then box the power units to which pepper companies had a possessory interest in with other trucks and trailers not related in any manner to Pepper Companies/LRS so that they could not be moved by any entity other than Ryder or its agents;

    g. They actively sought to deprive Pepper Companies/LRS possession of the power units, and trailers, to which it had possessory interest;

    h. Ryder took possession of the power units, trailers, and Pepper Electronic Equipment until this property was turned over to the drivers working at the direction of White Line and Darien Brokerage, and paid by Lanter Delivery;

    i. To the extent necessary, Ryder provided additional power units and trailers to White Line four drivers course to prematurely break their agreements with Pepper Companies to perform deliveries for White Line and Darien Brokerage for the benefit of Lanter Delivery, and;

    j. Ryder interfered with the business expectancy of Pepper Companies/LRS that the drivers and independent contractors would not breach the written agreements with Pepper Companies/LRS and that the employees of Pepper Companies/LRS but not breach their duties of loyalty and fiduciary duties.

64. Upon information and belief, this coordinated action by Ryder, its agents and mechanics occurred at each and every terminal and/or lot across the country at which Pepper Companies/LRS used to park power units and trailers between deliveries in the months prior to,

and on, August 22 2020.

65. His coordination required Ryder, in the months prior to August 22, 2020, to hand down communication to the original district managers to assign Ryder personnel to perform tasks in furtherance of the conspiracy to deprive Pepper Companies/LRS of access to its drivers, power units, and trailers.

66. Pepper companies/LRS could not have moved the power units to which it had a possessory interest because Ryder had rekeyed said power units.

67. As part of the disable and kill plot, Lanter Delivery also sent correspondence, via electronic mail, originating in St. Louis County, State of Missouri, to Ryder on August 22, 2020 stating that:

    a. Lanter Delivery terminated its business relationship with Timeless Logistical; and

    b. The Limited Collection Facilitation and Assumption Agreement between Lanter Delivery and Ryder, adversely impacted the agreement between Logistics Resource and Ryder.

68. This of course is on the same day that Pepper Companies learned that Lanter Delivery was terminating its relationships with Timeless Logistical and thereby its business relationship with the Pepper Companies.

69. The correspondence between Lanter Delivery and Ryder was, upon information and belief, planned well in advance and predicted upon what is believed to be a shared ownership interest between Lanter Delivery and Ryder, and Ryder's participation in the conspiracy against Pepper Companies.

70. Through the scheme, coordination, and efforts of Lanter Delivery, White Line, Darien Brokerage, former drivers of Pepper Companies, faithless employees of Pepper Companies,

Ryder, and other members of the scheme, all of which was planned in St. Louis County, State of Missouri, Logistics Resource's possession of all its leased equipment from Ryder, except about 14 of the nearly 1000 units, was stripped away on August 22, 2020.

71. Even though the equipment for which Logistics Resource and enforceable possessory interest should have remained in the possession of Logistics Resource, this equipment, these approximately 1000 units of equipment, were either:

    a. Being used for Lanter Delivery's benefit by drivers and independent contractors who where no longer contracted by Pepper Companies; and or

    b. despite assurances to the contrary, Ryder, Lanter Delivery, and their agents, employees, and representatives, misrepresented to Logistics Resource that they could access the leased equipment at any time.

72. Simply put, the newly converted drivers of Lanter Delivery, White Line, and Darien Brokerage change when their paychecks were coming from on August 22, got back in the power units and trailers leased by Logistics Resource, and drove off to make money for Lanter Delivery, White Line, and Darien Brokerage, who were all allied with Ryder.

73. Logistics resource at all times kept current the insurance on this leased equipment.

74. As part of the scheme to disable and kill Pepper companies, Lanter Delivery and/or its independent contractors, representatives, and/or agents in White Line and/or Darien Brokerage logged thousands of unauthorized miles between August 22 and August 30 on power units and trailers exclusively leased and insured by Pepper Companies.

75. Ryder also contracted Centurion Container in an effort to pick up additional power units and trailers which were unrelated to any agreement Ryder had which related to Lanter delivery.

13

76. Lanter Delivery did extend a small window of time in August 30, 2020 to Pepper companies to retrieve office equipment and office maintained on property owned or leased by Lanter Delivery.

77. Independent Service was contacted by authorities relating to inspections performed on said equipment after August 22, 2020. For example on or about August 26, 2020, the unit was pulled over for a DOT inspection in which the DOT contacted Independent Service.

## OTHER VENDORS

78. Additionally, on August 22, counsel for logistics resource received a notice of default and termination from Dedicated Equipment Solutions, LLC, which related to the rental of equipment in Montana comprised of pickup trucks and trailers.

79. This despite the fact the payment for said lease had been timely authorized issues by logistics resource on August 10, 2020 pursuant to invoice number 202007T.

80. Logistics resource has no knowledge as to why sent payment would not have been received by dedicated equipment solutions other than its delivery was handled by Rachel Tomasek. Upon information and belief, as part of Rachel Tomasek's role in the conspiracy, plot, and plan of plaintiff/counter defendant's to disable and kill pepper companies.

81. Rachel Tomasek had no independent authority to delay or fail to deliver any payment to be made on behalf of logistics resource.

82. Further, on August 20, 2020, logistics resource received a demand from Ryder to return certain units and equipment rented from Ryder and a contract separate and apart from any Ryder

14

contract relating to Lanter Delivery, which were rented on a short-term basis to service logistic resource's Centurion Container, LLC ("Centurion") account.

83. Logistics resource was current on the lease/rental with Ryder for this equipment leased, rented to service its Centurion account.

## ELECTRONIC PROPERTY OWNED BY PEPPER COMPANIES

84. In each vehicle power unit, LRS Leasing purchase and had the following electronic items installed (hereinafter, "Pepper Electronic Property")

   a. Geotab black boxes (ELD/GPS) which are installed and connect to the power units onboard central processing unit (CPU). These are attached to the plug port located below the steering wheel. The accompanying black box is secured under the steering wheel with zip ties.

   b. Samsung tablets which were mounted in a tablet holder on the power units dash.

   c. Drivecams Dash Camera Systems which were mounted on the power unit's dash.

85. This Pepper Electronic Property, which is worth hundreds of thousands of dollars in aggregate, remains in the possession of the plaintiff/counter defendant as part of their scheme.

86. To the extent that White Line, Darien Brokerage, and their drivers are currently using the Pepper Electronic Property to meet the regulatory requirements under state and federal law, there has been no authorization to do so.

## COUNT I - CONVERSION

87. Logistics Resource Solutions, Inc., hereby reallege and incorporate the allegations set forth in all paragraphs herein above as though specifically set forth herein.

88. Companies had a current and valid possessory interest in the approximately 1000 power units and trailers and any other equipment leased from Ryder and had legal possession of said equipment at the time possession of the equipment was deprived of pepper companies as part of the scheme, plan, coordination, and concerted efforts of Plaintiff/Counter-Defendant and conveyed to them as alleged hereinabove.

89. The scheme, to disable and kill pepper companies, was planned in, directed from, and coordinated with the Plaintiff/Counter-Defendant and others from St. Louis County, State of Missouri.

90. At all relevant times, LOGISTICS RESOURCE SOLUTIONS, INC., was and is the owner and had legal possession of the Pepper electronic property maintained inside the equipment leased from Ryder and from Dedicated Equiptment Solutions, LLC.

91. At all relevant times, as alleged in paragraphs hereinbelow, defendant/counter-claimant was and is the owner and had legal possession of the trade secret information on the computers owned by pepper companies and improperly accessed by Rachael Tomasek, Mike Tomasek, Anton Lobov, Antoine Wingard, Mark Cordsen, Randi Wood, and John Does one through 30 as part of the scheme, plan, coordination, and concerted efforts of the above listed.

92. At all relevant times, pepper companies was and is the owner and had legal possession of the confidential and proprietary information on the computers owned by pepper companies which had not otherwise been available to Lanter Delivery in the ordinary course of their business dealings and which was improperly accessed by Rachael Tomasek, Mike Tomasek, Anton Lobov, Antoine Wingard, Mark Cordsen, Randi Wood, and John Does as part of the scheme, plan, coordination, and concerted efforts of the above listed.

16

93. Pepper companies are entitled to the immediate possession of all pepper electronic property information taken by the Plaintiff/Counter-Defendant and all other entities.

94. Pepper companies demanded the return of all of the above property.

95. Despite the demands of Pepper Company, the property identified above has not been returned to pepper companies.

96. As described in detail above, White Line, Darien Brokerage, Lanter Delivery, and Ryder acting on their own behalf or through their agents, wrongfully took exclusive possession of approximately 1000 power units, trailers, and other equipment in which pepper companies had a possessory interest, and of the pepper electronic property maintained inside the equipment leased from Ryder and from Dedicated Equipment Solutions, LLC, and of the trade secret, confidential and proprietary information of Pepper Companies, and appropriated this for their own use in open defiance of pepper companies right to immediate possession thereof. The property includes, but is not limited to, the possessory interest in the equipment by the pepper electronic property, and trade secret, confidential and proprietary information.

97. Plaintiff/Counter-Defendants took possession of the information property alleged above with the intent to exercise control to the exclusion of the defendant/counter claimant right of ownership and possession. Plaintiff/Counter-Defendants have unlawfully come into possession of the property and unlawfully converted it and to the damage of the defendant/counter claimant.

98. Although it is believed that the property is worth hundreds of thousands of dollars, at this early stage of the lawsuit, it is impossible to determine the extent of the property taken and the exact value thereof.

99. The actions of the Plaintiff/Counter-Defendant are both an extreme and outrageous motive

and reckless disregard for the rights of the Defendant/Counter-Claimant.

WHEREFORE, LOGISTICS RESOURCE SOLUTIONS, INC., RESPECTFULLY REQUEST THAT THIS COURT GRANT JUDGMENT IN THEIR FAVOR, AND AGAINST THE Plaintiff/Counter-Defendant RYDER TRUCK RENTAL INC. AND AWARD MONETARY DAMAGES IN AN AMOUNT THAT IS FAIR AND REASONABLE, AND IN EXCESS OF $75,000.00 AND DETER LIKE CONDUCT IN THE FUTURE, TOGETHER WITH INTEREST AND ATTORNEYS FEES AND COSTS. Defendant/Counter-Claimant REQUEST SUCH OTHER AND FURTHER RELIEF AS THIS COURT MAY DEEM JUST AND PROPER AND DEMANDS TRIAL BY JURY.

## COUNT II

### UNJUST ENRICHMENT

100. Logistics Resource Solutions, Inc., hereby reallege and incorporate the allegations set forth in all paragraphs herein as though specifically set forth herein.

101. Through the above alleged acts which are part of the scheme, plan, coordination, and concerted efforts of Plaintiff/Counter-Defendant and all other entities, they have wrongfully taken possession of the trade secrets of the Defendant/Counter-Claimant as part of the scheme, plan, coordination, and concerted efforts of Plaintiff/Counter-Defendant and all other entities.

102. Through the above alleged acts, which are part of the scheme, plan, coordination, and concerted efforts of the plaintiffs/counterdefendants and all other entities, have wrongfully taken possession of the confidential and proprietary information of the Defendant/Counter-Claimant, along with the equipment (including nearly 1000 power units and trailers) that was subject to

18

valid leasehold interests and Pepper electronic property maintained in said equipment as part of the scheme, plan, coordination, and concerted efforts of Plaintiff/Counter-Defendant.

103. Plaintiff/Counter-Defendant has been unjustly enriched by obtaining the benefit of the trade secret, confidential and proprietary information of Pepper companies along with equipment that was subject to valid leasehold interests and Pepper electronic property maintained in said equipment without paying for its benefit.

104. The trade secret, confidential and proprietary information of Pepper companies has value to White Line, Darien Brokerage, and Lanter Delivery as it defines items which provide Plaintiff/Counter-Defendants a competitive advantage, including but not limited to, employee salaries, amounts paid to drivers, customers, vendors, pricing, and any discounts to customers. The other property and equipment has value to Plaintiff/Counter-Defendant as indicated by market value of said Pepper electronic property and equipment.

105. The confidential and proprietary information of Pepper companies has value to Plaintiff/Counter-Defendants as it provides them a competitive advantage, including but not limited to, employee salaries, scheduling and availability of drivers, amounts paid to drivers, customers, vendors, pricing, and any discounts to customers, all of which was not previously available to Lanter Delivery in the ordinary course of business.

106. The other property and equipment which Counter/Defendants took from Plaintiff have value to Counter/Defendants as indicated by the use, and by the market value, of said Pepper Electronic Property and equipment which is in the hundreds of thousands of dollars. Furthermore, Ryder did not have sufficient power units and trailers to provide transportation for the routes necessary for White Line and Darien Brokerage to meet the delivery needs of Lanter

19

Delivery's customers.

107. Without the unjust enrichment as alleged above, Lanter Delivery would have been in breach of its delivery obligations with its customers. Lanter Delivery was enriched thereby.

108. As a proximate cause of Plaintiff/Counter-Defendant's actions, Plaintiff/Counter-Defendant's have and will continue to be unjustly enriched at the expense of Pepper Companies.

109. Plaintiff/Counter-Defendant acted with motive and intentional and reckless indifference to the rights and interests of Pepper Companies in the trade secret, confidential and proprietary information of Pepper Companies, or of Defendant/Counter-Claimant's rights and interests in the personal property and equipment.

110. Plaintiff/Counter-Defendant's should be required to disgorge their unjust enrichment.

111. It would be inequitable and unjust for Plaintiff/Counter-Defendant's to retain the benefits of possessing and utilizing the trade secret, confidential and proprietary information of Pepper Companies, or of the Pepper Electronic Property and equipment.

WHEREFORE, Logistics Resource Solutions, Inc., respectfully request that this Court grant judgment in their favor, and against RYDER TRUCK RENTAL, INC and deter like conduct in the future, together with interest and attorneys' fees and costs, and such other and further relief as this Court may deem just and proper and demands trial by jury.

## COUNT III

## INJUNCTION PURSUANT TO MO. REV. STAT. 417.455 and 765 ILCS 1065/3

112. The confidential and proprietary information of C Pepper, Timeless Logistical, Independent

Service, Interstate Service, Logistics Resource, and LRS Leasing constitutes trade secrets within the meaning of the respective Uniform Trade Secrets Acts in that it represented a selective accumulation of information based on past purchasing, pricing, and selling experience, and cultivation of customers, employees , and independent contractors, and considerable time, money, and effort went into compiling the confidential and proprietary information of Pepper Companies.

113. The confidential and proprietary information of C Pepper, Timeless Logistical, Independent Service, Interstate Service, Logistics Resource, and LRS Leasing derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use

114. The confidential and proprietary information on the of C Pepper, Timeless Logistical, Independent Service, Interstate Service, Logistics Resource, and LRS Leasing were subject to efforts reasonable under the circumstances to maintain the secrecy of said confidential and proprietary information by utilizing servers and computers which required a valid C Pepper, Timeless Logistical , Independent Service, Interstate Service, Logistics Resource, and LRS Leasing user name  and a valid password to access said confidential and proprietary information, and limiting secured access to such information to only those necessary personnel.

115. As Office Manager, Area Managers, and Regional Managers of Pepper Companies, Defendants Rachael Tomasek, Mike Tomasek, Anton Lobov, Antoine Wingard, Mark Cordsen, Randi Wood, and John Does  as part of the scheme, plan, coordination, and concerted efforts of the above listed,  were top tier and upper echelon employee of C Pepper, Independent Service, and Logistics Resource.

21

WHEREFORE, LOGISTICS RESOURCE SOLUTIONS, INC., respectfully request that this Court grant judgment in their favor, and against RYDER TRUCK RENTAL, INC and deter like conduct in the future, together with interest and attorneys' fees and costs, and such other and further relief as this Court may deem just and proper and demands trial by jury.

## COUNT IV

## CLAIM PURSUANT TO 49 U.S.C. § 14704

116. LOGISTICS RESOURCE SOLUTIONS, INC., hereby realleges and incorporates the allegations set forth in all paragraphs herein above as though specifically set forth herein

117. Pursuant to 49 U S.C. sections 14704(a) LOGISTICS RESOURCE SOLUTIONS, INC., may bring a civil action for injunctive relief and damages for violations of 49 U.S.C. section 14102 and the regulations promulgated thereunder.

118. For the relevant period, LOGISTICS RESOURCE SOLUTIONS, INC., was the "owner" of the equipment and   had the "right to exclusive use of equipment" pursuant to 49 C.F.R. section 372.2.

119. Lanter Delivery, White Line, and Darien Brokerage were an "authorized carrier", actual or apparent, to transport property under 49 U.S.C. subtitle IV, part B during all relevant times.

120. Further, Lanter Delivery, White Line, and Darien Brokerage aided, abetted, encouraged, or required an "authorized carrier" to violate 49 C.F.R. Part 376 in violation of 49 C.F.R. § 390,13. Lanter Delivery, White Line, and Darien Brokerage used the equipment and continue to use some of the equipment without a written lease with Logistics Resource, the "owner," for Lanter Delivery, White Line, and Darien Brokerage's benefit in violation of 12 C.F.R. sections 376.11 and 376.12.

121. Through the above alleged acts, which were part of the scheme, plan, coordination, and concerted efforts of all Defendants, LOGISTICS RESOURCE SOLUTIONS, INC., and the Pepper Companies were damaged by this violation of the aforesaid federal statute and regulations by not only depriving LOGISTICS RESOURCE SOLUTIONS, INC., of its possessory interest in the equipment at issue, but also to facilitate Plaintiff/Counter-Defendant's scheme to disable and kill LOGISTICS RESOURCE SOLUTIONS, INC., and C Pepper, Timeless Logistical, Independent Service, Interstate Service, Logistics Resource, and LRS Leasing.

122.  Through the above alleged acts, as a direct and proximate result, LOGISTICS RESOURCE SOLUTIONS, INC., and the Pepper Companies was further damaged by having numerous DOT violations cited upon Pepper Companies while Lanter Delivery, White Line, and Darien Brokerage were causing drivers to unlawfully use the equipment at issue.

123. Through the above alleged acts, LOGISTICS RESOURCE SOLUTIONS, INC., and the Pepper Companies may be further damaged in the future it incur any public liability from its equipment being involved in an accident while being used by Lanter Delivery, White Line, and Darien Brokerage, whereby Pepper Companies could potentially held liable under the "logo liability" and/or "lease liability" doctrines.

124. In bringing this cause of action, Pepper Companies are entitled reasonable attorneys' fees pursuant to 49 U.S.C. section 14704Ca).

WHEREFORE, LOGISTICS RESOURCE SOLUTIONS, INC., respectfully request that this Court grant judgment in their favor, and against RYDER TRUCK RENTAL, INC and deter like conduct in the future, together with interest and attorneys' fees and costs, and such other and further relief as this Court may deem just and proper and demands trial by jury.

## COUNT V

## CIVIL CONSPIRACY

125. LOGISTICS RESOURCE SOLUTIONS, INC., hereby reallege and incorporate the allegations set forth in all paragraphs herein above as though specifically set forth herein.

126. Plaintiff/Counter/Defendants knowingly agreed in St. Louis County, State of Missouri, to conspire and did conspire to achieve the unlawful purpose of disabling and killing the Pepper Companies including LOGISTICS RESOURCE SOLUTIONS, INC., through the actions and conduct described above and below .

127. In the course of their efforts in furtherance of their conspiracy, Ryder knowingly which include, but are not limited to:

 a. Hijacked , converted , and took possession of hundreds of Logistics Resource 's power units , trailers, and other equipment to which it had an exclusive possessory interest so that Defendants were unjustly enriched ;

 b. Took possession of Pepper Electronic Property;

 c. Caused C Pepper, Timeless Logistical, Independent Service, Interstate Service's drivers to breach their independent contractor agreement or brokerage agreement;

 d. Caused C Pepper, Independent Service, and/or Logistics Resource 's managers and other employees to breach their duties of loyalty and fiduciary duties;

 e. Caused C Pepper, Independent Service, and/or Logistics Resource's managers and

24

employees to violate the trade secrets act and Defend Trade Secrets Act and transmit proprietary and confidential information of Pepper Companies to Lanter Delivery, White Line, and Darien Brokerage;

f.    Engaged in computer tampering;

g.    Violated the FMCSR (49 CFR Parts 390 and 391) by having independent contractors/drivers drive without a valid "application for employment ," a valid pre- employment controlled substances and alcohol test, or valid placards on their trucks;

h.    Unlawfully coerced and/or abetted drivers to violate the FMCSR in violation of 49 CFR §§ 390.6(a) and 390.13;

i.    Utilized promissory notes which Lanter Delivery had not previously intended to collect upon to leverage the financial hardship upon Plaintiffs;

j.    Violated Federal Motor Carrier "Leasing Regulations" (49 CFR Part 376) by utilizing Logistics Resource's equipment without valid leases from Pepper Companies while Logistics Resource had the right to exclusively use said equipment;

k.    Tortuously interfered with Pepper Companies ' business expectations with Non-Lanter Customers by causing lessors to breach lease agreements relating to the lease of equipment ;

l.    Interfered with the ability of Pepper Companies to calculate the payroll and amounts due to drivers for the period ending August 22, 2020 and the ability to pay same; and

m.      Fraudulently induced Pepper Companies, and Pepper, to enter into Promissory Notes and a Guaranty with Lanter Delivery .

128.      As alleged above, each member of the conspiracy committed a wrongful act in furtherance of the conspiracy.

129.      In addition to the actions alleged hereinabove, Defendants cooperated , aided, and/or ratified each other's acts in furtherance of their conspiracy as alleged above.

130.      Pepper Companies has suffered, and will continue to suffer, damages as a result of Defendants' acts in furtherance of their conspiracy.

131.      Defendants acted with evil motive and intentional and reckless indifference to the rights and interests of Pepper Companies, warranting the imposition of punitive damages.

132.      As a direct and proximate result of Defendants' wrongful conduct, Pepper Companies have been damaged.

133.      These actions were a conspiracy under Missouri law, Illinois law, and 18 U.S.C. section 1030Cb) .

WHEREFORE, LOGISTICS RESOURCE SOLUTIONS, INC., respectfully request that this Court grant judgment in their favor, and against RYDER TRUCK RENTAL, INC and deter like conduct in the future, together with interest and attorneys' fees and costs, and such other and further relief as this Court may deem just and proper and demands trial by jury.

## GOOD FAITH CERTIFICATION

Pursuant to the Local Rules, I hereby certify that counsel for the movant has called the plaintiff's attorney on May 18, 2021 and two times today to attempt to resolve the issue. She has not returned the telephone calls. As of May 19, 2021 I have attempted to confer with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort attempted to resolve the issues but has been unable to resolve the issues.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy hereof was served upon: HUNTON ANDREWS KURTH LLP, ATTN: CRYSTAL CARSWELL, ESQ.,333 SE 2ND AVE. STE 24, MIAMI, FLORIDA 33131 305-810-2500, on May 19, 2021

/S/ KENNETH D. COOPER
KENNETH D. COOPER
KennethDCooperlawoffice@gmail.com
Attorney for Plaintiff
400 S.E. 8th Street
Fort Lauderdale, FL 33316
Telephone: (954) 522-7177
FLORIDA BAR NUMBER 362166

27