## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-21573-CIV-LENARD/LOUIS

RYDER TRUCK RENTAL, INC.

       Plaintiff,

vs.

LOGISTICS RESOURCE
SOLUTIONS, INC.,

       Defendant,

_____/

LOGISTICAL RESOURCE SOLUTIONS, INC.,
C. PEPPER LOGISTICS, LLC.,
TIMELESS LOGISTICAL SOLUTIONS, INC.,
INDEPENDENT SERVICE PROVIDER, LLC.,
INTERSTATE SERVICE PROVIDER, INC.,
LRS LEASING, LLC AND JONATHAN PEPPER,

       Third-Party Plaintiffs,

vs.

LANTER DELIVERY SYSTEMS, LLC.,
WHITE LINE SYSTEMS, LLC.,
DARIEN BROKERAGE, LLC., and
RYDER TRUCK RENTAL, INC.,

       Third-Party Defendants.

_____/

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO

## PLAINTIFF RYDER TRUCK RENTAL, INC.'S MOTION TO

## DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS [DE 42]

      COMES NOW the Defendant and move this Court to deny plaintiff's Motion to Dismiss

in part and grant the motion in part and states:

## PRELIMINARY STATEMENT

Simultaneously filed herewith, the Defendant files its Motion to Amend the Counterclaims in that the Defendant agrees with the plaintiff as to certain counts and hereby withdraws Counterclaim II – Injunction pursuant to Mo. Rev. Stat. 417.455 and 765. ILCS 1065/3.  If the Court allows for the Counterclaims to be amended, this Count will be left out of the Amended Counterclaims.  As stated below, other issues will be agreed to and an amended pleading would reduce and clarify the issues, however, there are sufficient facts pled to support the claims.

The Defendant sufficiently pled the essential factual allegations to state claims for relief that are plausible on its face for the purpose of alleging conspiracy, conversion, and other counts as stated below.  The facts as stated in the complaint establish that the plaintiff, Ryder, along with Lanter, Whitelines, and Darien all planned for months prior to taking the trucks from the Pepper Companies.  At the time the trucks were taken, it is alleged that Pepper <u>was current on his truck payments</u>.  Therefore, Ryder, by their contract, did not have the right to take the trucks.  While Ryder makes unsupported references to the evidence outside the record, the factual allegation in the complaint is that the Defendant was current on its payments.  The pleadings as stated, and evidence that will be presented, will show that on August 22, 2020, the very day Ryder took the trucks, Ryder sent a letter alleging "anticipatory breach of contract" and demanded adequate assurances, neither of which are in their contract.  Lanter, on the same day they conspired with Ryder, sent a letter cancelling the contract it held with the Pepper Companies.  If Defendant was current on his payments, as alleged, Ryder had no legal right to convert the trucks to their own use and give them to Lanter or White Line.  The Ryder letter is dated the same day as Ryder and the

other companies took the trucks.  Exhibit A and B.  Therefore, the pleadings sufficiently plead the facts and the evidence will show that the parties had to plan in advance. The Ryder and the Lanter letters are dated the same day as Ryder, Lanter, White Lines and Darrien took the trucks, and the trucks were taken some time before 6 a.m.  Therefore, there was a civil conspiracy planned in advance of the taking of the trucks.  You cannot take the trucks first and then send letters stating there is a breach of contract and a termination of the agreement.  You may send a letter terminating the agreement, but that does not give the right to pick the trucks up.  At the time Ryder and Lanter picked the trucks up Pepper was current on his payments.  Therefore, there was no right by Ryder to terminate the contract.  While LRS's Amended Counterclaims may not be artfully stated, if allowed to amend the Counterclaims they, along with the proposed amended Third-Party defendant claims reduces the facts by some twenty (20) pages and clarifies the allegations that the federal Judge in Missouri had issues with.  The complaint would attach the "evidence" that the Missouri judge stated was missing.  While normally only facts are alleged, with the documents being attached, it would cure any deficiencies along with support for the factual allegations in the counterclaims and thirty- party claims.  While the allegations are lengthy, they still allege valid causes of actions.  The basic facts are that the defendant was current on his payment and Ryder and various third parties did "disable and kill" LRS and its related entities and put him out of business. The factual foundation to support the claims are stated but could be better stated.

According to the Amended Counterclaims, LRS and its related entities contracted with Lanter Delivery Systems, LLC ("Lanter") to provide certain delivery services.  Am. Countercl. ¶ 15.  To provide those services, LRS leased certain equipment from Ryder pursuant to a Truck

Lease and Service Agreement (the "TLSA") executed on April 11, 2014. *Id.* at ¶¶ 11(a), 15, 18, 24, 18, 57, 61; *see also* Compl., Ex. A.

While the plaintiff contends that the facts are not sufficient to support the claims the fact is that on August 22, 2020, Lanter notified Ryder of its termination of the business relationship with LRS and other related entities that provided services to Lanter, and because of the Limited Collection Facilitation and Assumption Agreement between Lanter and Ryder, this adversely impacted the TLSA. Am. Countercl. ¶¶ 6, 35. LRS claims that this resulted in Ryder allegedly declaring an anticipatory breach of its agreements with LRS and repossessing the rented and leased equipment, which was located in states across the country. *Id.* at ¶¶ 21, 31-33, 51. They took the trucks prior to 6 a.m in most cases.  How would Ryder, at 6 a.m. know that Lanter was cancelling the contract and take the trucks before they sent the letter.  LRS factually alleges that Ryder "re-keyed the ignition to the power units to which Pepper Companies had a valid possessory interest when said power units were parked overnight at a parking lot to which Ryder had access and control" without LRS's knowledge. *Id.* at ¶¶ 21, 23-25, 27. LRS retained access to the power units at all times until Ryder declared an anticipatory breach of the TLSA. From these allegations, LRS concludes that Ryder "performed other key roles in the scheme to disable and kill LRS." *Id.* at ¶¶ 17, 29. In connection with this purported conspiracy, LRS has asserted five (5) causes of action against Ryder, namely: Conversion (Count I), Injunction Pursuant to Mo. Rev. Stat. 417.455 and 765 ILCS 1065/3 (Count II), Unjust Enrichment (Count III), Claim Pursuant to 49 U.S.C. § 14704 (Count IV), and Civil Conspiracy (Count V).  All of the foregoing facts sufficiently alleged support those claims.  Ryder desires this Court to go outside the four corners of the Counterclaim and allege facts that are not in the lease and in the letters.  These are affirmative defenses to the Counterclaim, but not allegations that would support dismissal.  Within the four corners of the Counterclaim, if taken as true and if construed in the light most favorable to the Counterclaimant,

the allegation are sufficient.

Ryder alleges, with agreements that are outside the four corners of the compliant that the LRS's Amended Counterclaims Counts II through V fail to state a claim as a matter of law. Within the four corners of the Counterclaims the facts that are alleged support the claims. Ryder alleges that LRS's claims for Conversion (Count I), Unjust Enrichment (Count III), and Civil Conspiracy (Count V arising under 18 U.S.C. § 1030)—are implausible because they are tort- based claims relying on the same operative facts as the state trade secret claims and thus are preempted. Florida is an alternative pleadings state. Florida allows for separate and conflicting causes of action. At trial, the decision has to be made as to which Counts would go forward, but at the pleading stage, alternative remedies may be properly pled until trial or summary judgment.

I.   **RYER ALLEGES LRS'S AMENDED COUNTERCLAIMS COUNTS II THROUGH V SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

Ryder alleges that the Court should dismiss the Amended Counterclaims against Ryder pursuant to Federal Rule of Civil Procedure 12(b)(6) because they fail as a matter of law.

A.   **Defendant agrees as to the Legal Standard**

The Defendant agrees that the Federal Rule of Civil Procedure 8(a)(2) provides that a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, the complaint "must contain factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In this case, Defendant/Counter-Claimant asserts factual allegations that are "enough to raise a right to relief

above the speculative level."  The allegations are very clear and state:

17.   Ryder had actively participated in the conspiracy to disable and kill the Pepper
      Companies for as many as nine months, and perhaps even more, prior to
      August 22, 2020.

18.   Ryder's participation to the scheme was critical, because it did not have the
      hundreds of power units readily on hand for White Line to use to transport
      Lanter Delivery contracted shipments without using those power units which
      were already validly leased to Pepper Companies.

19.   Ryder, Lanter Delivery, White Line, and other conspirators knew that unless
      the drivers who Lanter Delivery and White Line hoped to entice away from the
      valid independent contractor agreements with Pepper Companies, had a power
      unit to pilot and trailers to carry the shipments, the disable and kill scheme
      would fail . . .

. . .

21.   [M]echanics, at the direction of Ryder . . .  secretly re-keyed the ignition to
      power units to which the Pepper Companies had a valid possessory interest . . .

. . .

23.   [A]t times when agents of LRS were not present, mechanics, and other agents of
      Ryder would surreptitiously gain access to the master key box and use keys
      assigned to specific power units leased by LRS from said master key box to
      access and power units. . . .

. . .

30.   On the morning of the coup d'etat, August 22, 2020 agents of Ryder met the
      drivers of the Pepper Companies/LRS as they pulled into the parking lot. . . .

31.   In fact, on August 22, 2020, agents of Ryder took the additional following actions
      in furtherance of the conspiracy:

      a.   The [sic] stopped the drivers as they pulled into the parking lot;

      b.   They instructed the drivers to give them the keys of the power units;

      c.   They instructed the drivers to remove all personal property from the
           power unit; . . .

      . . .

      e.   They moved the power units to a part of the parking lot not typically used by
           the Pepper Companies trucks and were moved to a remote parking area
           altogether, such as lots at airports and other remote areas;

      f.   They then boxed the power units to which the Pepper Companues had a
           possessory interest in with other trucks and trailers not related in any

                           **manner to Pepper Companies/LRS so that they could not be moved by any entity other than Ryder or its agents;**

g.     **They actively sought to deprive the Pepper Companies/LRS possession of the power units and trailers to which it had possessory interest;**

h.     **Ryder took possession of the power units, trailers, and Pepper Electronic Equipment until this property was turned over to the drivers working at the direction of White Line and Darien Brokerage, and paid by Lanter Delivery;**

i.     **To the extent necessary, Ryder provided additional power units and trailers to White Line, and caused drivers to prematurely break their agreements with Pepper Companies to perform deliveries for White Line and Darien Brokerage, for the benefit of Lanter Delivery; and**

j.     **Ryder interfered with the business expectancy of the Pepper Companies/LRS that the drivers and independent contractors would not breach their written agreements with Pepper Companies/LRS and that the employees of Pepper Companies/LRS would not breach their duties of loyalty and fiduciary duties.**

32.     **[T]his coordinated action by Ryder, its agents and mechanics occurred at each and every terminal and/or lot across the country at which Pepper Companies/LRS used to park power units and trailers between deliveries in the months prior to, and on, August 22, 2020. . . .**

**. . .**

36.     **This of course is on the same day that Pepper Companies learned that Lanter Delivery was terminating its relationships with Timeless Logistical and thereby, its business relationship with the Pepper Companies. . . .**

**. . .**

41.     **LRS at all times kept current the insurance on this leased equipment.**

The above are only part of the factual allegation that support all the Counts and they are sufficient to support the allegations when the Court is considering a motion to dismiss for failure to state a claim, where the "plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *YMD Records, LLC v. Ultra Enterprises, Inc.*, 361 F. Supp. 3d 1258 (S.D. Fla. 2019) (citing *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678, 129

S.Ct. 1937)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Lienemann v. Cruise Ship Excurions, Inc.*, 2018 WL 6039993, *2 (S.D. Fla. 2018) (citing *Twombly*, 550 U.S. at 555 (citation omitted). The fact that they took the trucks when the payments were current should be in and of itself sufficient facts to support the claims along with other facts that they conspired with others to do so.

The plaintiff alleges that the Court should apply the law of the forum state to the amended counterclaims.  Ryder claims LRS's Amended Counterclaims intermittently refers to and appears to apply Missouri and  Illinois law, rather than Florida. *See* Am. Countercl. ¶¶ 8, 56, 69-74, 86, 99, 107. Ryder alleges LRS has not alleged that the laws of Florida do not apply to the claims and therefore, the Court should apply Florida law to the claims because no conflict of law exists. The defendant agrees that "[a] federal court sitting in diversity applies the conflict of law rules of the forum state." *Bartlebaugh v. Liberty Mut. Fire Ins. Co.*, 9:18-CV- 80313, 2018 WL 6529080, at *2 (S.D. Fla. June 20, 2018) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). However, the allegations are that the trucks were taken not only in Florida but multiple states, therefore, some of the Florida law may apply and some of the law would apply in the states where the other trucks were taken. The laws of Florida, Missouri, and Illinois are similar in relevant part and therefore, it is premature to decide the issue of the applicable law until more facts are established.  However, the complaint should not be dismissed on this basis.  There are facts to sustain the law in any of the states based upon the facts as pled.

As pled, the purported tortious conduct of Ryder occurred nationwide. *See id*. at ¶ 32 ("Upon information and belief, this coordinated action by Ryder, its agents and mechanics occurred at each and every terminal and/or lot across the country at which Pepper Companies/LRS used to park power units and trailers between deliveries in the months prior to, and on, August 22, 2020."). LRS has pled the factual allegations to support the claim.  Ryder states LRS has not provided evidence

suggesting Ryder meant to direct its activities to Missouri or Illinois specifically. As a general rule, evidence is not presented to support factual allegations. However, Ryder has not denied that they did not take the trucks. When the Missouri court dismissed the case, it was based upon personal jurisdiction and whether there were sufficient contacts, not that Ryder did not do the acts described. While the Defendant believes there are sufficient facts, being filed simultaneously herewith is a Motion to Amend so that Defendant may be able to better allege, reduce, and clarify the pleadings and to attach any evidence in support of its claims.

The Eastern District of Missouri, in granting Ryder's motion to dismiss for lack of personal jurisdiction, specifically found that LRS "failed to draw any connection between Ryder's allegedly tortious actions and the state of Missouri." *C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, 4:20-CV-01444-MTS, 2021 WL 3725680, at *6 (E.D. Mo. Aug. 23, 2021). This is not the same as taking the trucks from multiple states including Florida.  While the laws of Florida may apply there are sufficient facts to maintain the action.

### B. Ryder states LRS'S Claim for Injunctive Relief for Trade Secret Misappropriation (Count II) Fails as a Matter of Law.

The defendant agrees that in order to state a claim for misappropriation of trade secret information under the Florida Uniform Trade Secrets Act ("FUTSA"), LRS must prove that "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy; and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012) (quoting *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (citing Fla. Stat. § 688.002)); *see also DataTrak Bus. Sols., Inc. v. ComputerBanc, Inc.*, 10-60372-CIV, 2010 WL 11597692, at *5 (S.D. Fla. Nov. 8, 2010). In order to be a trade secret, the information LRS "'seeks to protect must

derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy.'" *Hennegan Co.*, 855 F. Supp. 2d at 1360 (quoting *Del Monte Fresh Produce Co.*, 136 F. Supp. 2d at 1291). The party claiming trade secret protection has the burden to show how the information qualifies as a trade secret. *See Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F. 3d 1407, 1410 (11th Cir. 1998) (citing *Lee v. Cercoa, Inc.*, 433 So.2d 1, 2 (Fla. 4th DCA 1983)).

Ryder alleges that LRS's Count II must be dismissed because LRS fails to allege any facts to support the required element of how the "trade secrets" derive independent economic value from not being generally known to others. *See* Fla. Stat. § 688.002. Notably, the Eastern District of Missouri has already dismissed LRS's claim for violation of the Defend Trade Secret Act under 18 U.S.C. § 1836(b)(1) against third-party defendants Lanter Delivery, White Line, and Darien Brokerage for the same deficiency. *See C. Pepper Logistics, LLC*, 2021 WL 3725680, at *8, fn 15 (dismissing the claim for Defend Trade Secret Act Under 18 U.S.C. § 1836(b)(1)).

Ryder alleges that the "nearly identical allegation were deemed insufficient under Missouri law.  Additional facts were added to cure any alleged defects.

The pleadings state in relevant part:

> **At all relevant times, as alleged in paragraphs herein below, Defendant/Counter-Claimant was and is the owner and had legal possession of the trade secret information on the computers owned by the Pepper Companies and improperly accessed by Rachel Tomasek, Mike Tomasek . . . At all relevant times, LRS was and is the owner and had legal possession of the confidential and proprietary information on the computers owned by the Pepper Companies which had not otherwise been available to Ryder in the ordinary course of their business dealings and which was improperly accessed by Rachel Tomasek, Mike Tomasek, …as part of the scheme, plan, coordination, and concerted efforts with Plaintiff/Counter-Defendant to disable and kill LRS and the other Pepper Companies…As described in detail above, Ryder, …acting on their own behalf or through their agents, wrongfully took exclusive possession of …and of the Pepper Electronic Property maintained inside the equipment leased from Ryder from Dedicated Equipment Solutions, LLC and of trade secrets, confidential, and proprietary information of Pepper Companies, and appropriated this for their**

own use… The property includes, but is not limited to the possessory interest in the equipment by the Pepper Electronic Property, and trade secret, confidential, and proprietary information…The confidential and proprietary information of C Pepper, Timeless Logistical, Independent Service, Interstate Service, Logistics Resource, and LRS Leasing constitutes trade secrets within the meaning of the respective uniform trade secrets acts in that there was a selective accumulation of information based on past purchasing, pricing, and selling experience, and cultivation of customers, employees, and independent contractors, and considerable time, money, and effort went into compiling the confidential and proprietary information of Pepper Companies…The confidential and proprietary information of C Pepper Time, Timeless Logistical, Independent Service, Interstate Service, Logistics Resource, and LRS Leasing <u>derived independent economic value</u>, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use…Ryder misappropriated trade secrets, knew, or had reason to know that the trade secrets were improperly obtained, when Ryder converted the trucks, made separate ignition keys for all the trucks, and then downloaded all of the data from the trucks and utilized said data to obtain the routes of the trucks and all other related data kept in the Counter-Claimant's proprietary software programs. The software program contained the trade secrets of the Counter-Claimant…Being pled in the alternative, as permitted by Florida and Federal law, Defendant/Counter-Claimant alleges that Plaintiff/Counter-Defendant has been unjustly enriched by obtaining the benefit of the trade secret, confidential, and proprietary information of Pepper Companies along with equipment that was subject to valid leasehold interests and Pepper Electronic Property maintained in said equipment without paying for its benefit…The trade secret, confidential, and proprietary information of Pepper Companies has value to Ryder, …as it defines items which provide Plaintiff/Counter-Defendant with a competitive advantage, <u>including but not limited to, employee salaries, amounts paid to drivers, customers, vendors, pricing, and any discounts to customers.</u> The other property and <u>equipment has value to Plaintiff/Counter-Defendant as indicated by the market value of said Pepper Electronic Property and equipment.</u>

Therefore, the elements of Trade Secrets under both Florida and Federal law are met. As the plaintiff stated:  The Courts have held that the trade secrets allegations are not very high.  The factual allegations may be similar however, the above facts support the elements of the cause of action were met.

### C. LRS's Claim for Unjust Enrichment (Count III) Does Not Fail as a Matter of Law.

In order to assert a claim for unjust enrichment in Florida, a party must assert "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit,

and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Am. Marine Tech, Inc. v. World Group Yachting, Inc.,* 418 F. Supp. 3d 1075, 1083 (S.D. Fla. 2019) (quoting *Hercules, Inc. v. Pages*, 814 F.Supp. 79, 80 (M.D. Fla. 1993) (citing *Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So.2d 710, 712 (Fla. 2d DCA 1988)).

Judge Mara held in *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 Fla. Supp. 2d 1218 (2013) that "a party may plead in the alternative for relief under an express contract and for unjust enrichment." *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 Fla. Supp. 2d 1218, 1227 (2013) Plaintiff argues that there can be no unjust enrichment claim when there is an express contract between the parties. Alternative theories may be plead even though they are in conflict.  At trial the party must decide which theory goes forward. *Betz Investco Ltd. Partnership v. Groupo Immobilliano cabbie ,* 721 So. 2d 787 (1996), *DiChristopher v. Board of County Com'rs ,* 908 So.2d 492 (5th DCA 2005). Accordingly, Defense may plead unjust enrichment in the alternative because plaintiff took the trucks outside of the provisions of the contract. They took the trucks before they gave any notice therefore, we are contesting the existence of the express contract governing the subject of the contract. While there may be a written contract, an alternative pleading is permissible in Florida. *See Martorella* at 1228 ("Plaintiff may, however, maintain an equitable unjust enrichment claim in the alternative to her legal claims against Defendants."). *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.,* 188 F.R.D. 662, 666 (S.D.Fla.1999) also states that "[a]lthough equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief." *Martorella* also held "It is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails." *Martorella* at 1228.

In this case the written contract does not have a replevin provision for "adequate

assurances." Ryder claims they were entitled to repossess the trucks, while the payments were current under some theory of law that is not in the contract. Therefore, pleadings in the alternative are permissible for that reason. If the written contractual provisions do not allow repossession while the payments are current, then Ryder acted outside the contract and unjust enrichment may go forward.

Ryder claims that neither party disputes the existence of an express contract—the TLSA. However, this is inaccurate. Pursuant to the TLSA, following a breach or default, Ryder may "immediately repossess any or all Vehicles, Substitute Vehicles and rental vehicles wherever they may be located, without further demand or notice." This clause is in dispute when the payments are current and the failure to give proper notice is contested. Therefore, the contract may not apply to the facts in this case and the acts may be outside the contract.

Ryder contends that LRS has failed to plead the benefit conferred upon Ryder by LRS or how Ryder appreciated such benefit. As stated above, the details of the computer information are what has been of value and to the benefit of Ryder. Therefore, the allegation for unjust enrichment is pled in the alternative and the elements of the cause of action are met.

Ryder then alleges that the misappropriation of trade secrets claims, is expressly preempted by the FUTSA (Fla. Stat. §§ 688.001, *et seq.*), and the ITSA (765 ILCS 1065/2 *et seq.*). "To determine whether allegations of trade-secret misappropriation preempt a plaintiff from sufficiently pleading a separate, but related tort, 'the issue becomes whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is barred by § 688.008.'" *Gonzalez-Hernandez v. Orbay*, 08-21782-CIV, 2009 WL 10668626, at *2 (S.D. Fla. Jan. 15, 2009) (quoting *Allegiance Healthcare Corp. v. Coleman,* 232 F. Supp. 2d 1329, 1135-36 (S.D. Fla. 2002) (quoting *Coulter Corp. v. Leinert,* 869 F. Supp. 732, 734 (E.D. Mo. 1994))). If there is no "material distinction" between a trade secret claim and a separate tort claim,

the tort claim is preempted.  *Id.*

Ryder claims LRS's claim for unjust enrichment relies on the same allegations as its claim for injunctive relief for violation of Missouri's and Illinois' Trade Secret Acts. *See gen.* Am. Countercl. Counts II and III.  The defendant has agreed to dismiss the injunctive relief claim.  Therefore, the is no preemption and it was pled in the alternative, as argued above.

Ryder argues that "[i]t is blackletter law that 'the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy.'

Ryder alleges that there must be an explicit denial of an adequate remedy at law.  In this case, the facts demonstrate that the contractual provision may not apply due to the failure to give proper notice and taking the trucks outside the contract.  Therefore, there would not be an adequate remedy, if the contractual provision does not apply and pleading in the alternative is the proper procedure to follow where there may be affirmative defenses that cover both the contract and unjust enrichment.

### D. Ryder alleges LRS's Amended Counterclaim Count IV for Claim Pursuant to 49 U.S.C. § 14704 Fails as a Matter of Law.

LRS alleges violations of the Truth-in-Leasing regulations codified in 49 C.F.R. 376, pursuant to 49 U.S.C. § 14704. A person injured by a violation of 49 U.S.C. § 14102 and its corresponding regulation, may bring suit under 49 U.S.C. § 14704. *See* 49 U.S.C. § 14704. But, "[t]o bring a suit for violation of § 14102, a plaintiff must allege the existence of a lease between an authorized motor carrier and a lessor, the failure of that lease to comply with regulations promulgated under § 14102, and that the violation injured the plaintiff." *Stewart v. A2B Cargo Inc.*, 20 C 278, 2020 WL 5076716, at *3 (N.D. Ill. Aug. 26, 2020) (citing 49 U.S.C. §§ 14102 & 14704).

Ryder alleges that  LRS misapplies the statute and regulations to this case. Under 49 C.F.R. 376.11, an "authorized carrier may perform authorized transportation in equipment ***it does***

***not own*** only under the following conditions…" 49 C.F.R. 376.11 (emphasis added). The

regulation then goes on to identify four conditions that must be met. *See* 49 C.F.R. 376.11 (a-d).

Ryder argues that  LRS wholly ignores Ryder is the actual owner of the equipment, ***not*** LRS.

LRS had a valid leasehold interest in the trucks and thereby, had possessory rights to the trucks

and equipment.  When Ryder took the trucks, they became an "authorized carrier" when it

repossessed the equipment LRS was leasing.  Am. Countercl. ¶ 89. Ryder had no legal right to

take the equipment.   Ryder argues that there  is no argument, nor can there be, that Ryder

"perform[ed] authorized transportation in equipment it does not own" without satisfying the

conditions stated in 49 C.F.R. 376.11. The transportation was not authorized, it was an illegal

taking of the trucks and equipment.

Ryder argues that LRS does not "fall within the zone of interest to be protected by the

statute in question." Ryder argues that the doctrine of "prudential standing," as opposed to

constitutional standing under Article III, has three guiding principles: "'the general prohibition on

a litigant's raising another person's legal rights, the rule barring adjudication of generalized

grievances more appropriately addressed in the representative branches, and the requirement that

a plaintiff's complaint fall within the one of interests protected by the law invoked.'" *Id*. (quoting

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386, 188 L.Ed. 2d 392

((2014) (quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12, 124 S.Ct. 2301, 159

L.Ed.2d 98 (2004)). "In so doing, the Supreme Court 'has required that the plaintiff's complaint

fall within 'the zone of interests to be protected or regulated by the statute or constitutional

guarantee in question.'" *Id*. (quoting *Valley Forge Christian Coll. v. Americans United for*

*Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (quoting *Association of Data*

*Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184

(1970))). In order "to meet the requirements of our zone-of-interest analysis the injury alleged

must be shown to be '*as a consequence* of the alleged constitutional error.'" *Id.* (quoting *Valley*

*Forge Christian Coll.*, 454 U.S. at 485).   In this case, LRS is within the "zone-of-interest" in that

they took their trucks.   This is not a remote zone.   It is a direct zone of interest in that Ryder took

the trucks.

Ryder alleges in part that Pursuant to 49 U.S.C. § 14102, Congress regulates leases

between *independent truck drivers* and motor carriers. *See Fox v. Transam Leasing, Inc.*, 839

F.3d 1209, 1211 (10th Cir. 2016). The intent of the Truth-in-Leasing regulations is to protect

independent truckers from motor carriers' abusive leasing practices. *Id.* (citing *Owner–Operator*

*Indep. Drivers Ass'n, Inc. v. Comerica Bank* (*In re Arctic Express Inc.*), 636 F.3d 781, 795 (6th

Cir. 2011); *Global Van Lines, Inc. v. ICC*, 627 F.2d 546, 547–48 (D.C. Cir. 1980); Lease and

Interchange of Vehicles, 42 Fed. Reg. 59,984 (Nov. 23, 1977)). Accordingly, Congress

authorized the regulations "to remedy disparities in bargaining positions between independent

owner operators and motor carriers," "to address many of the 'inequities in the lessor/lessee

relationship' between carriers and independent truckers, Lease and Interchange of Vehicles," and

to "eliminate or reduce opportunities for ... illegal or inequitable practices by motor carriers."

*Fox*, 839 F.3d at 1215 (quoting *In re Arctic Express Inc.*, 636 F.3d 781, 796 (6th Cir. 2011);

*Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime*, 398 F.3d 1067, 1070 (8th Cir. 2005),

42 Fed. Reg. 59,984 (Nov. 23, 1977)).   As Ryder states in part: "…Accordingly, Congress

authorized the regulations "to remedy disparities in bargaining positions between independent

owner operators and motor carriers…to address many of the 'inequities in the lessor/lessee

relationship' between carriers and independent truckers, Lease and Interchange of Vehicles," and

to "eliminate or reduce opportunities for ... illegal or inequitable practices by motor carriers."   In

this case, the facts support the portions of the statute that state… Congress authorized the

regulations "to remedy disparities in bargaining positions between independent owner operators

and motor carriers," "to address many of the 'inequities in the <u>lessor/lessee relationship'</u> between carriers and independent truckers, <u>Lease</u> and <u>Interchange of Vehicles</u>," and to "eliminate or reduce opportunities for ... <u>illegal or inequitable practices by motor carriers</u>." There is a lease, there was an interchange of vehicles, and there was an illegal or inequitable practice by a motor carrier. If Ryder took the vehicles, as they did, and took them illegally, then they violated the statute in the "lessor/lessee relationship." Therefore, they are within the zone of interest and the statute was violated by Ryder's illegal or inequitable act.

Ryder argues that the case law is clear—Congress intended the statutes and regulations to protect independent truckers, not sophisticated corporate motor carriers, <u>from any underhanded practices in leasing trucks or equipment</u>. The truth-in-leasing regulations are broader than Ryder claims. It also covers the "lessor/lessee relationship and any illegal acts violating the statute.

Ryder argues that the primary motivation for the truth-in-leasing regulations is to protect against "abusive leasing practices," It is abusive to reposes the trucks while the payments are current. Ryder argues that ostensible violations of § 14704 do not arise out of a lease agreement. In all their arguments above they argue they do arise under the lease.

Ryder alleges that the first element of a civil conspiracy claims requires an agreement between two or more parties. LRS has pled in multiple occasions that Ryder conspired with others, had their mechanics change the keys and took the trucks for Lanter and White Line. As such they violate the statute. The remedies are alleged in the statute and in the "Wherefore, clause damages are requested. The pleading state that Ryder along with White Line, Lanter and Darrie all plotted and planned for more than nine months to take the trucks. Pursuant to 18 U.S.C. § 1030(b), the statute states; "[w]hoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section."

**E.   Ryder argues that LRS's Amended Counterclaim Count V for Civil Conspiracy Fails as a Matter of Law**

Ryder argues that LRS asserts that a civil conspiracy occurred under Missouri Law, Illinois law, and 18 U.S.C. § 1030(b) (the Computer Fraud and Abuse Act ("CFAA")).

Ryder alleges that in Florida, "[t]o plead civil conspiracy, a plaintiff must allege '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'"

The first element of a civil conspiracy claims requires an agreement between two or more parties. LRS has failed to plead that there was an agreement. The pleading state that Ryder along with White Line, Lanter and Darrien all plotted and planned for more than nine months to take the trucks.   2021 WL 3725680, at *7, fn 14 (dismissing the claim for civil conspiracy pursuant to 18 U.S.C. § 1030(b)).[7]

Additionally, pursuant to 18 U.S.C. § 1030(b), "[w]hoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section." Here, LRS failed to indicate which specific violation of 18 U.S.C. § 1030(a) constitute the object or objects of the purported conspiracy, nor has LRS pled any allegations concerning Ryder's allegedly engaging in any prohibited conducted under 18 U.S.C. § 1030. Ryder alleges that the first element of a civil conspiracy claims requires an agreement between two or more parties. LRS has plead in multiple sentences that Ryder conspires with the others, had their mechanics change the keys and took the trucks for Lanter and White Line.  As such they conspired and violated the statute.  The remedies are alleged in the statute and in the "wherefore clause" damages are requested.  The pleadings state that Ryder along with White Line, Lanter and Darrien all plotted and planned for more than nine months to take the trucks.  Pursuant

to 18 U.S.C. § 1030(b), the statute states, "[w]hoever conspires to commit or attempts to commit an

offense under subsection (a) of this section shall be punished as provided in subsection (c) of this

section."

Accordingly, the facts alleged support Count V.

## II.     LRS'S AMENDED COUNTERCLAIMS ARE NOT PREEMPTED TO THE EXTENT THEY INVOLVE THE PURPORTED TRADE SECRETS

Ryder alleges that LRS's claims for conversion, unjust enrichment (*see* supra I.D), and

civil conspiracy (under 18 U.S.C. § 1030) are preempted. Ryder alleges that Florida's trade secret

statute preempts LRS's remaining claims to the extent they involve LRS's purported trade secrets.

Section 688.008 of FUTSA provides that it "displace[s] conflicting tort, restitutory, and other law

of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. §

688.008(1). FUTSA further provides that it does not affect "[c]ontractual remedies, whether or not

based upon misappropriation of a trade secret" or "[o]ther civil remedies that are not based upon

misappropriation of a trade secret." Fla. Stat. § 688.008(2)(a)-(b). Accordingly, "FUTSA preempts

all claims, other than claims *ex contractu*, based on misappropriation of trade secrets." *Am. Honda

Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005).

Ryder argues that regardless of whether Florida law applies to LRS's misappropriation

claim, both the Missouri and Illinois trade secret statutes preempt LRS's remaining claims to the

extent they involve LRS's purported trade secrets. Ryder argues that  LRS's Counts I, III and V

are preempted by the state trade secret acts to the extent they are based on the conversion of

LRS's purported trade secrets.

As previously stated, Florida is an alternative pleading state.  If the violations in the trade

secrets were federal in nature, then the federal statute and trade secret law would apply.  If the

violations were in several states, then the law in that state would apply and when the case goes to

trial the Court would decide, based upon the facts and what laws apply to the violations and in

what state they occurred.  If the violations occurred in Illinois, then Illinois law would apply.  To

the extent they occurred in Florida, Florida law would apply.  The Counts should not be dismissed

because the elements of the cause of action are present.  There may be affirmative defenses raised

to these issues and the Court at some time would decide what law applies.  This is not an issue that

should be subject to a motion to dismiss.  The factual elements are present and therefore, the

Counts should not be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant, LRS moves this Court to deny the motion with

respects to all the Count not agreed to be dismissed by the defendant LRS.

Dated: <u>October 1, 2021</u>.

Respectfully submitted,

<u>/s/ Kenneth D. Cooper</u>
Kenneth D. Cooper, Esq. (362166)
KennethDCooperLawOffice@gmail.com
Law Office of Kenneth D. Cooper
400 S.E. 8th Street
Fort Lauderdale, FL 33316
Telephone: (954) 522-7177
Facsimile: (954) 764-5874
Attorney for Defendant
   Logistics Resource Solutions, Inc.

## CERTIFICATE ATTESTING TO THE CONFERRAL

I HEREBY CERTIFY that the movant has conferred with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion. All parties objected to the request.

*/s/ Kenneth D. Cooper*
Kenneth D. Cooper, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was by e-service through the Court's CM/ECF system on <u>October 1, 2021</u> on all counsel or parties of record on the Service List below.

*/s/ Kenneth D. Cooper*
Kenneth D. Cooper, Esq.

## SERVICE LIST

Crystal B. Carswell
ccarswell@huntonAK.com
Hunton Andrews Kurth LLP
333 SE 2nd Avenue, Suite 2400
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-1690
Attorneys for Plaintiff
Ryder Truck Rental Inc.